In the Matter of Robin F. FRANK, Debra J. Frank, Debtors.

Bankruptcy No. 3–82–02210.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Feb. 14, 1983.

Irvin G. Bieser, Jr., Dayton, Ohio, John T. Ducker, Dayton, Ohio, for debtors in possession.

John R. Butz, Springfield, Ohio, for Creditors' Committee.

Barry P. Reich, Springfield, Ohio, for Milan and Lynda Kennedy.

Peter Donahue, Dayton, Ohio, for T.J. Rogers.

Howard B. Hershman, Toledo, Ohio, for Banc Ohio.

Jeffrey R. Rush, Cincinnati, Ohio, for Central Trust.

Robert B. Pavalos, Springfield, Ohio, for H & B Truck Stop.

Sanford H. Flack, Springfield, Ohio, for Ralston.

James M. Brennan, Dayton, Ohio, for Travers Indem.

Kathryn A. Lamme, Dayton, Ohio, for Cessna Finance.

Glenn W. Collier, Springfield, Ohio, for Martin Hull and Harper.

## PRELIMINARY PROCEDURE

CHARLES A. ANDERSON, Bankruptcy Judge.

This matter is before the Court upon various Objections to Debtors' "Notice of Intent to Sell Soybeans and Use Proceeds for Purchase of Cattle" filed on 21 December 1982. The Notice was worded as a self-executing grant of authority to sell, subject to any objections filed by any parties in interest within ten days of the date of the Notice.

Three objections were duly filed. On 23 December 1982, the Official Creditors' Committee objected on the bases that the proposed sale is not in the best interest of the creditors and raises the potential for a depletion of assets of Debtors' estate. On 29 December 1982, T.J. Rogers objected on the bases that his alleged security interest in one-half of the crops would be jeopardized by a resulting "depletion of the assets readily convertible to cash," and that the proposed sale is not in the best interests of creditors. On 30 December 1982, Ralston Purina objected to the proposed sale without stating grounds for objection.

The Court heard the Objections on 2 February 1983. Debtors did not personally appear to testify. Of the Objectors, only the Creditors' Committee and Ralston Purina were represented at the hearing. T.J. Rogers did not appear.

At the hearing, the Debtor failed to appear. The interested parties agreed to submit the matter to the Court upon the record inclusive of a written statement by Debtor Robin F. Frank, a written summary (prepared by counsel for the Creditors' Committee) of three experts' opinions of the feasibility of Debtors' proposed sale and cattle purchase, and a written summary (also prepared by counsel for the Creditors' Committee) of the marketability of milo (one of Debtors' grain crops). There were no objections to the submission of these documents into evidence. They are, however, of little probative value, being more in the nature of general assumptions and conclusions as pleaded.

## FINDINGS OF FACT

Debtors filed a Petition for business reorganization in this Court on 5 August 1982 under 11 U.S.C. Chapter 11. Debtors have remained "in possession" throughout the reorganization to date. 11 U.S.C. §§ 1101(1) and 1107(a). Debtors operate an Ohio farm and presently have stored approximately 2750 bushels of soybeans, 2250 bushels of milo, and 50 tons of baled hay and milo stalks. Debtors also own approximately 100 acres of currently unused pasture land in Tennessee.

Debtors propose to sell the soybeans and use the proceeds of the sale to purchase cattle to be pastured in Tennessee and sold "in the late summer." Debtors estimate that the soybeans in storage can be sold for $15,250.00. Debtors also estimate that the milo and hay are worth approximately $7,000.00, but cannot be sold because there is "no market." Debtors propose to purchase 55 head of cattle (375 pounds each at $0.55 per pound) with $11,325.00 of the proceeds from the sale of the soybeans. The balance of the proceeds would presumably be available to maintain the livestock until they could be sold "in the late summer" for an estimated $24,750.00 (750 pounds each at $0.60 per pound), though the record is unclear and mentions payment of these moneys to T.J. Rogers. Debtors argue that the proposed sale of soybeans and purchase of cattle would thus net $28,600.00, compared to $14,825.00 which would be netted by liquidation of Debtors' grain crop.

The Objectors herein question Debtors' figures. Objectors believe that the cattle could be sold for only $0.57 per pound at the end of the summer at an average weight of only 600 pounds, for a net return of $18,-810.00 instead of $24,750.00. Objectors also contend that the milo is, in fact, marketable for $5,625.00, and the stalks of hay and milo could be sold "to neighbors" for at least $2,000.00. Objectors therefore calculate that Debtors' liquidated grain crop would net nearly $19,000.00 (using $11,325.00 as the amount of "net proceeds" from the sale of the soybeans). Objectors also contend that Debtors have failed to allow for the various risks, for example, "death loss, health problems and resulting veterinary expenses," and for "expenses for salt, mineral and feed suppliments [sic]." Objectors conclude that Debtors' cattle venture is unwise because of the slight, if any, gain and substantial risk.

## DECISION AND ORDER

The decision to sell crops and invest the proceeds in a continuing business enterprise, such as proposed herein, is within the routine operation of a debtor in possession of a farm. Such decision typically is not "extraordinary," as would, for example, be a proposal for sale of the farm itself. As stated by this Court in *Allied Technology, Inc. v. Brunemann & Sons, Inc.,* 25 B.R. 484 (Bkrtcy.Ohio, 1982),

> A debtor in possession, by definition, "operates the business." 11 U.S.C. §§ 1107(a) and 1108. Such operation implicitly requires the exercise of reasonable judgment in ordinary business matters. . . . This business judgment is controlling throughout the reorganization of a debtor in possession. . . . [citation omitted.]

> Court approval of a debtor in possession's judgment that [a given action] is in the best interest of the debtor's business should not be withheld on the basis of a second-guessing of the debtor's judgment unless the matter is presented in the context of 11 U.S.C. § 1104(a)(1) for determination of the larger question of the

competency of debtor in possession's business judgment. It is not the function of the Court to operate the debtor, 11 U.S.C. §§ 364(a), 1104(a), 1107(a) and 1108. As long as [a debtor's decision] appears to enhance a debtor's estate, Court approval of a debtor in possession's decision to assume the lease should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code. . . .

As indicated by the very fact of Debtors' notification to creditors of the proposed sale and purchase, Debtors situation is not entirely "in the ordinary course of business." 11 U.S.C. § 363(b). To begin with, if T.J. Rogers is in fact secured by the subject crops as alleged, Debtors in essence appear to propose sale of the crops free from Mr. Rogers' lien. In light of Mr. Rogers' objection, such sale should properly be accomplished only through formal adversarial proceedings as required by Rule 701(3) of the Bankruptcy Rules of Procedure. Further, the fact that Debtors' proposal essentially provides for transfer of significant, relatively liquid assets into nonliquid assets to be located in Tennessee is enough to remove the transaction from the realm of "ordinary."

Most significantly, upon review of the record, the Court is unpersuaded that the proposed investment in cattle in Tennessee is not "too speculative" for the Court to approve. See *Allied Technology, Inc. v. Brunemann & Sons, Inc., supra,* as quoted above. Aside from the fact that Debtors' proposal encompasses removal of significant assets from the ready reach of creditors and into a less "liquid" form, the proposal itself seems to involve more than typical business risk. Debtor has proposed embarking on a cattle operation for the purpose of apparent marginal profit without any explanation of the means of funding the operation. There is no provision for maintenance of the cattle, either for unexpected expenses such as health care or for routine expenses such as supervision. The Court reiterates that the evidentiary record in this regard is particularly sparse since the Debtor, who proposes the transaction, did not appear to testify.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Debtors' Intent to Sell Soybeans and Use Proceeds for Purchase of Cattle is DENIED. The Court again notes, however, that Debtors, within their discretion, may pursue the sale of the subject grain crops as permitted and provided by 11 U.S.C. § 363(b) and Bankruptcy Rule 701(3) and can let the pasture land as income producing, all within the business judgment rule employed herein.