In re Randy W. **NEWTON**, Debtor.

**CITIZENS FIRST NATIONAL BANK OF PRINCETON, Plaintiff,**

v.

**RUMBOLD & KUHN, INC., an Illinois corporation, Defendant.**

**Bankruptcy No. 185–00775.**
**Adv. No. 185–0268.**

United States Bankruptcy Court, C.D. Illinois.

Sept. 11, 1986.

Stephen A. Kouri, Vonachen, Cation, Lawless, Trager & Slevin, Peoria, Ill., for plaintiff.

Barry M. Barash, Barash, Stoerzbach & Henson, Galesburg, for defendant.

## OPINION

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

The Debtor was a farmer, and on January 19, 1984, he borrowed from Citizens First National Bank of Princeton (Plaintiff) $123,800.00 and executed a Security Agreement granting the Plaintiff a security interest in 90 acres of corn, 167 acres of soybeans, and 74 acres of wheat to be planted, grown, matured, harvested, and stored during the 1984 crop year. The security interest was validly perfected by the filing of a Uniform Commercial Code Financing Statement. Pursuant to Section 9–307 of the Uniform Commercial Code as adopted in Illinois (Ill.Rev.Stat.1985, ch. 26, par. 9–307) the Plaintiff served upon Rumbold & Kuhn, Inc. (Defendant) notice of its lien on the 1984 crop. Prior to the Debtor filing his Chapter 11 proceeding he discussed with his lawyer the effect on Plaintiff's lien if he delayed planting the 1984 crop until after his Chapter 11 proceeding was filed. His lawyer advised him if he delayed planting his 1984 crop until after he filed his Chapter 11 proceeding, Section 552 of the Bankruptcy Code would prevent the attachment of the Plaintiff's security interest to the 1984 crop. Based upon this advice, and with the specific intention of preventing attachment of the Plaintiff's lien, on May 7, 1984, Debtor filed a Chapter 11 proceeding. The Debtor listed only three creditors, the Farmers Home Administration, with a total claim of $46,119.00, the unsecured component of which was $21,369.10; the Plaintiff,

with a total claim of $63,838.87, with an unsecured component of $44,033.87; the Debtor's grandmother, with a claim of $3,250.00 for half the cost of seed and fertilizer for the 1984 crop year. Shortly after filing the Chapter 11 proceeding, Debtor planted his 1984 crop. In September and October of that year the Debtor harvested the 1984 crop and sold it to the Defendant. The management of the Defendant was familiar with the Debtor, having purchased grain from him on numerous other occasions. When the Debtor first attempted to sell the 1984 crop to the Defendant, because of the notice of lien, the Defendant wanted to make the check payable to both the Debtor and the Plaintiff. The Debtor obtained a certificate from the Bankruptcy Court indicating he had filed a Chapter 11 proceeding and he advised the Defendant that inasmuch as he had filed a Chapter 11 proceeding he was entitled to the proceeds from the sale of the 1984 crop and he requested the check be issued solely to him. The Defendant was satisfied the Debtor's position was correct, and issued the check solely in the name of the Debtor. The Debtor used the proceeds of the check to operate his farm. None of the proceeds were used to reduce the Debtor's loan with the Plaintiff or for Debtor's personal expenses. During the 1984 crop year, The Debtor filed a plan of reorganization, proposing to pay his creditors 50% of their claims. The plan was accepted by his grandmother, but rejected by the Plaintiff and the other creditor. Negotiations between the Debtor and the rejecting creditors failed to produce an acceptable plan. The Debtor did nothing more, and on January 28, 1985, the Debtor's Chapter 11 proceeding was dismissed for failure to prosecute.

On April 8, 1985, Debtor filed a Chapter 7 proceeding. In the Chapter 7 proceeding the Plaintiff obtained an extension of time to file an objection to Debtor's discharge, but the extended date passed without the Plaintiff filing any objection. On September 24, 1985, Debtor's discharge was entered. On October 28, 1985, in the Debtor's Chapter 7 proceeding, Plaintiff brought an adversary proceeding against the Defendant to recover the sum of $51,663.89, being the amount paid to the Debtor by the Defendant for the 1984 crop upon which Plaintiff contends it had a lien. The Defendant filed an answer denying the existence of the lien, and then filed his Motion for Summary Judgment. This Court denied the motion, finding there were issues of fact as to whether the sale was in the ordinary course of business and to a bona fide purchaser. This matter then came on for a hearing on the merits. Throughout this adversary proceeding, the Defendant took the position it purchased the 1984 crop free and clear of liens, because with the filing of the Chapter 11 proceeding, Section 552 prevented the attachment of Plaintiff's security interest in the 1984 crop which was planted after the filing of the Chapter 11 proceeding. The Plaintiff admitted Section 552 had such an effect, but countered by arguing that under Section 363 notice and court approval of the sale were required, but not given or obtained, and when the Chapter 11 proceeding was dismissed, Plaintiff's lien was revested pursuant to Section 349. The Plaintiff also argued that if notice had been given and a hearing held, steps could have been taken to protect the interest of all parties concerned. The Defendant's response was that the sale was in the Debtor's ordinary course of business and notice and hearing were not required by Section 363, and to require such would prevent a farmer from selling his crops and thereby cast doubt of the ability of a farmer to utilize a Chapter 11 proceeding.

■ The parties agree that initially, the legal effect of Section 552 was to prevent the attachment of the Plaintiff's lien on the 1984 crop planted after the filing of the Chapter 11 proceeding. Their disagreement is over the effect to be given to Section 349(b) which provides in part as follows:

"(b) Unless the court, for cause, orders otherwise, a dismissal of a case ...—

(1) reinstates—

(A) any proceeding or custodianship superseded under section 543 of this title;

(B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and

(C) any lien voided under section 506(d) of this title;"

Therefore, the issue before this Court is whether Section 349(b) reinstates the Plaintiff's lien, and divests the Defendant of its rights, as purchaser, to the 1984 crop. The issue involves the interaction of Sections 552 and 349 and appears to be one of first impression. Neither party has submitted any definitive authority in support of their respective positions.

■ Section 349(b) expresses the general rule that to the extent possible a dismissal of a petition reverses what has transpired during a bankruptcy. *In re Merritt*, 39 B.R. 462 (Bkrtcy.1984). Although Section 349(b) contains several cross references to other sections of the Bankruptcy Code which it affects, Section 552 is not one of them. This omission is significant. In *In re BSL Operating Corp.*, 57 B.R. 945 (Bkrtcy.S.D.N.Y.1986) the court rejected a debtor's contention that it was revested with a lease (which it had failed to assume) upon dismissal of its chapter 11 case, the court noting that Section 365 was not one of the enumerated sections affected by a section 349(b) dismissal. Similarly, in the case before this Court, Section 349(b) does not provide for reinstatement of a security interest cut off by Section 552. Rather, Section 349(b) provides only for the reinstatement of liens voided under Section 506(d) unless the court orders otherwise for cause.

The legislative history to Section 349(b) supports such an interpretation. It provides

"Subsection (b) specifies that the dismissal reinstates proceedings or custodianships that were superseded by the bankruptcy case, reinstates avoided transfers, reinstates voided liens, vacates any order, judgment, or transfer ordered as a result of the avoidance of a transfer, and revests the property of the estate in the entity in which the property was vested at the commencement of the case. The court is permitted to order a different result for cause. The basic purpose of the subsection is to undo the bankruptcy case, *as far as practicable*, and to restore all property rights to the position in which they were found at the commencement of the case. *This does not necessarily encompass undoing sales of property from the estate to a good faith purchaser.* Where there is a question over the scope of the subsection, the court will make the appropriate orders to protect rights acquired in reliance on the bankruptcy case." (Emphasis added.) H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 338 (1977) and S.Rep. No. 95–989, 95th Cong., 2d Sess. 48–49 (1978), reprinted in 1978 U.S.Code Cong. & Admin. News 5787, at 6294 and 5834–35.

The legislative history suggests a determination be made as to whether the defendant was a "good faith purchaser".

Section 1–201(9) of the Uniform Commercial Code (Ill.Rev.Stat.1985, ch. 26, par. 1–201(9)) defines a buyer in the ordinary course as one who in good faith and without knowledge that the sale to him is in violation of the security interest of a third party in goods, buys in the ordinary course from a person in the business of selling goods of that kind. Section 1–201(19) of the Uniform Commercial Code (Ill.Rev.Stat. 1985, ch. 26, par. 1–201(19)) defines good faith as honesty in fact in the conduct or transaction concerned. The requirement that a good faith purchaser take without notice of adverse claims means "that the purchaser must have no 'actual knowledge of the defects in the title [to the assets bought], or knowledge of such facts and circumstances as would have put a man of ordinary circumspection upon inquiry.'" *In re Rock Industries Machinery Corp.*, 572 F.2d 1195 (7th Cir.1978).

In the case before this court, at the time of the sale, the Defendant had knowledge

of the bankruptcy proceeding, however, there was no defect to debtor's title which Defendant could have known about. Because of the post-petition planting of the 1984 crop and the effect of Section 552, plaintiff's lien had not attached to the 1984 crop. Knowledge of the bankruptcy did not require the defendant to inquire further. If it had, what would the inquiry have produced? Only that a Chapter 11 proceeding was pending. It wouldn't have told the defendant that the reorganization had failed and the proceeding dismissed, as that stage of the proceeding had not as yet been reached. The defendant was not required to speculate on the debtor's ability to successfully confirm a reorganization. Nor should the Defendant, as a matter of policy, bear the risk that the debtor's attempt at reorganization might fail and that the case might later be dismissed.

 The plaintiff also contends the sale failed to comply with the notice and hearing requirements of Section 363(c), in that the debtor's sale of all of his grain amounted to a sale of substantially all of his assets and was in effect a liquidation, and as such, the sale cannot be regarded as one in the ordinary course of business under Section 363(c). In *In re Johns-Manville Corp.*, 60 B.R. 612 (Bkrtcy.S.D.N.Y.1986), the court addressed the scope and meaning of the phrase "ordinary course of business." The court identified two tests which courts have applied. Under the "vertical dimension" or "creditor's expectation" test, the court looks to whether the debtor's transaction is within the "day to day business" of the debtor. Thus, as long as the transaction by a debtor is consistent with a creditor's reasonable expectations of what transactions a debtor in possession is likely to enter into in the course of its business, it will be considered "ordinary." The court stated:

> "The 'ordinary course of business' standard is purposely not defined so narrowly as to deprive a debtor of the flexibility it needs to run its business and respond quickly to changes in the business climate. Title 11 procedures are not meant to straightjacket a debtor and a debtor must be allowed to marshall assets on an 'as needed' basis. The policy behind the Code recognizes that the debtor needs a certain degree of freedom on its road to reorganization so that it might avoid precisely those pitfalls which brought it into bankruptcy initially." 60 B.R. 612, 617.

In addition to the vertical dimension test, courts have recently utilized a "horizontal dimension" or "industry-wide" test. The focus of this test is whether the type of transaction engaged in by the debtor is in the course of *that debtor's business* or in the course of some other business.

The evidence substantiates that under either of these tests, the debtor's sale of the crops was in the ordinary course of business. The defendant had purchased debtor's crop in previous years. As the 1984 crop was harvested it was taken to the elevator for sale and the proceeds were used to pay farm expenses. Farmers either store or sell harvested grain in this fashion and there was no evidence to indicate that there was any unusual factor—i.e. time or place of sale or motivation associated with the sale. Not only was the sale of the grain ordinary, but it was an essential step in the debtor's efforts to reorganize.

The plaintiff relies on the case of *In the Matter of Frank*, 27 B.R. 748 (Bkrtcy. 1983). In that case the debtors wanted to sell crops located in Ohio and reinvest the proceeds in cattle to be located in Tennessee. In denying the debtor's request, the court focused on the fact that a relatively liquid asset was being converted into a nonliquid asset to be located in another area and held the transaction was not within the realm of "ordinary". Similar facts do not exist in this case.

 I, therefore, find that the Debtor's sale to the Defendant was in the ordinary course of business to a good faith purchaser and hold that plaintiff's lien did not revest so as to divest the Defendant of the rights it acquired by its purchase.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.