**In the Matter of Robert Earl DEPEW and Linnea Adela Depew, Debtors.**

**Bankruptcy No. 84–10507.**

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

Oct. 20, 1989.

Opinion on Motion to Alter or Amend May 16, 1990.

---

Daniel J. Skekloff, Fort Wayne, Ind., for debtors.

Tina Nommay, Office of U.S. Atty., Fort Wayne, Ind., for FmHA.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

This case was filed under Chapter 11 of the United States Bankruptcy Code on May 31, 1984. On May 4, 1988, the court confirmed debtors' proposed plan. Confirmation operated as a discharge of debtors' pre-petition obligations. 11 U.S.C. § 1141(d)(1). Since confirmation binds both debtors and creditors to the terms of a confirmed plan, it effectively replaces debtors' pre-petition obligations to creditors, which were discharged, with the obligations to those creditors set forth in the confirmed plan. *In re Pennsylvania Iron and Coal Co., Inc.*, 56 B.R. 492, 495 (Bankr.S.D.Ohio 1985); *In re American*

*Properties, Inc.*, 30 B.R. 239, 246 (Bankr.D. Kan.1983). *See also* 11 U.S.C. § 1141(a).

Debtors filed a final report and application for final decree on July 7, 1989. The report represents that the initial payments to creditors, funded out of the confirmation deposit, have been made. It also identifies the various periodic payments debtors are required to make to the different creditor classes under the terms of the plan. Notice of the final report was issued to all creditors for an opportunity to object.

Objections to the final report were filed on behalf of both the Farmers Home Administration and The Community State Bank. These creditors object because the debtors have failed to make the periodic payments due them, as required by the terms of the confirmed plan, on account of both their secured and unsecured claims. Based upon this default, the FmHA also filed a motion to dismiss this case, pursuant to 11 U.S.C. § 1112(b)(8).

Both the final report and the objections to it, together with the motion to dismiss, came before the court for a hearing, at which the court heard the representations and arguments of counsel. Debtors do not dispute their failure to make the periodic payments due FmHA and Community State Bank, as called for by the plan. They do not deny that they are in default in their obligations under this plan. The court finds this default to be a material one. As a result, the motion to dismiss is well-taken.

At the hearing, the FmHA asked the court to go beyond the mere dismissal of this case and also revoke the order confirming the plan and with it debtors' discharge.[1] *See* 11 U.S.C. § 1144. This would have the effect of restoring debtors' original, pre-petition obligations to creditors, as they existed prior to confirmation. Although the court can dismiss this case due to debtors' material default, it is not able to grant the additional relief the FmHA has request-

---

1. The Bankruptcy Code has no provision which directly addresses revocation of the discharge that accompanies confirmation of a Chapter 11 plan. The discharge can only be attacked indirectly, through revocation of the order of confir-
mation. Robert E. Ginsberg, Bankruptcy, ph. 11, 654, at p. 11,074 (1986). *See also In re Jersey Island Packing Co.*, 152 F. 839, 840 (D.N.D.Cal. 1907).

ed—revocation of confirmation and the discharge.

The first deficiency with the additional relief the FmHA has requested is a procedural one. Bankruptcy Rule 7001(4) & (5) specifically requires the initiation of an adversary proceeding in order to revoke both the discharge and an order confirming a plan. This type of relief is not available through the less formal proceedings on "contested matters" which are currently before the court. Thus, even if the request were well taken, this matter is not in a posture which would permit the court to act.

Although an order of confirmation can be revoked, and in doing so the court is also required to revoke the debtor's discharge, the opportunities for this are quite limited. Revocation of a confirmation order is governed by 11 U.S.C. § 1144. This provision is the exclusive means to revoke confirmation. The court cannot do so through its "general equity jurisdiction." *Matter of Braten Apparel Corp.*, 21 B.R. 239, 255 (Bankr.S.D.N.Y.1982); *aff'd*, 26 B.R. 1009 (D.S.D.N.Y.1983). *See also In re Chipwich, Inc.*, 64 B.R. 670, 678 (Bankr.S.D.N.Y.1986). The request must be made within 180 days after the entry of the order of confirmation and may only be granted if the order of confirmation was procured by fraud. 11 U.S.C. § 1144.

The first requirement for obtaining this relief is that it must be sought "before 180 days after the entry of the order of confirmation." 11 U.S.C. § 1144. This 180 day window cannot be enlarged. *See* Bankruptcy Rules 9006(b)(2) and 9024. Confirmation occurred on May 4, 1988. The request to revoke the order of confirmation was not made until the hearing on the motion to dismiss, which occurred on September 27, 1989. Even if we consider the request to have been made at the same time the motion to dismiss was filed, August 9, 1989, it is still outside the 180 day window specified by § 1144.

Beyond the issues associated with the timeliness of revocation of confirmation, it is also factually deficient. Revocation of confirmation is a drastic remedy. As a result, this relief is available only where the order of confirmation is obtained through fraud. 11 U.S.C. § 1144. The 1984 amendments to the Bankruptcy Code emphasize the very limited nature of the circumstances which will support this relief. As currently worded, revocation of confirmation is permitted "if and only if such order is procured by fraud".[2] 11 U.S.C. § 1144. Thus, "[w]ithout a specific showing of the requisite fraudulent intent, the bankruptcy court ha[s] no authority under section 1144 to revoke its confirmation order." *In re Longardner & Assoc., Inc.*, 855 F.2d 455, 461–62 (7th Cir.1988).

There has been no suggestion or argument that confirmation of debtors' proposed plan was obtained by fraud. Instead, we are confronted only with the situation in which subsequent events have demonstrated that the debtors are not able to fulfill the obligations the confirmed plan has imposed upon them. The inability to fulfill a confirmed plan is very different from having obtained confirmation through fraud. It does not justify revocation of the confirmation order. *In re Errington*, 39 B.R. 968, 971 (Bankr.D.Minn.1984).

So long as the order of confirmation stands, it must have the effect given it by the Bankruptcy Code—binding both debtors and creditors to its terms and discharging debtors' pre-petition obligations. *See In re Jersey Island Packing Co., supra*, 152 F. at 840. The post-confirmation dismissal of a Chapter 11 does not affect the finality of the confirmation order or the discharge that goes with it. *See Matter of Bishop*, 74 B.R. 677, 681 (Bankr.M.D.Ga.1987). *See also In re Smith*, 95 B.R. 468 (Bankr.W.D.Ky.1988). Both are effective "without regard to whether the debtor pays according to the plan or not." *In re N.S. Garrott & Sons*, 48 B.R. 13, 16 (Bankr.E.D.Ark.1984). *See also* Robert E. Ginsberg, Bankruptcy ph. 11,6541, at p. 11,073 and ph. 11,652, at p. 11,074. Thus, although this case will be dismissed, dis-

---

**2.** This amendment did not become effective until after this case was filed. Therefore, it is not directly applicable. It does, however, give insight into the meaning Congress intended the statute, as originally worded, to have.

missal does not revoke debtors' discharge and their obligations to creditors, as set forth in the confirmed plan, remain unaltered.

## DECISION ON MOTION TO ALTER OR AMEND

When the Code, its legislative history or the commentators to date discuss what should happen in the event a Chapter 11 reorganization fails, the universe of available options seems to comprise either conversion to Chapter 7 or liquidation *within* the existing Chapter 11 case. *In re Jartran, Inc.*, 886 F.2d 859, 866 (7th Cir.1989) (emphasis original). The physical laws which operate in the alternate universe of post-confirmation dismissal have rarely been considered. Consequently, "[a]mong the many complicated and unanswered questions regarding post-confirmation dismissal is the effect upon secured creditors whose claims were impaired in the confirmed plan." David A. Lander and David A. Warfield, *A Review and Analysis of Selected Post–Confirmation Activities in Chapter 11 Reorganizations*, 62 Am.Bankr.L.J. 203, 229 (1988). This case requires the court to consider these questions.

On May 4, 1988, the court confirmed a Chapter 11 plan which had been proposed by the debtors. The order of confirmation was submitted jointly by debtors and the Farmers Home Administration and incorporated an earlier stipulation concerning the treatment of that creditor's claim. The plan impaired the rights of the FmHA. Its secured claims were established at a total of $174,000.00, with the remaining amounts due to be treated as an unsecured claim.

By an order of October 20, 1989, the case was dismissed because of debtors' material default with respect to the confirmed plan. *See* 11 U.S.C. § 1112(b)(8). The traditional options of conversion to Chapter 7 or liquidation within the Chapter 11 were not available. Debtors are farmers and the case cannot be converted to Chapter 7 without their consent, which is not present here. 11 U.S.C. § 1112(c). Post-confirma-

tion modification of the plan, to permit a liquidation under the auspices of Chapter 11, is not possible; neither the proponent of the plan nor the reorganized debtor has sought such a modification.[1] *See* 11 U.S.C. § 1127(b).

The case was dismissed on the motion of the FmHA. At the dismissal hearing, the FmHA asked the court to go beyond the simple act of dismissal and, in doing so, also revoke the order of confirmation and debtors' discharge. Although the motion to dismiss was granted, we declined to grant the additional relief the FmHA had requested, for the reasons discussed in the decision of October 20, 1989.

This matter is now before the court on the FmHA's motion to alter or amend the order and decision of October 20, 1989. The motion questions that part of the decision which declined to revoke the order of confirmation and debtors' discharge. The FmHA does not directly take exception to the procedural and statutory concerns originally addressed by the court. Instead, it argues that the post-confirmation dismissal of a Chapter 11 also vacates or revokes the order of confirmation as a matter of law, pursuant to 11 U.S.C. § 349(b). This is an issue the court did not discuss in its original decision.

Section 349 of the Bankruptcy Code establishes the effect of dismissal. It reads:

(a) Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(f) of this title.

(b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—

(1) reinstates—

(A) any proceeding or custodianship superseded under section 543 of this title;

---

1. In making this observation, the court assumes, without deciding, that the confirmed plan has not been substantially consummated. *See* 11 U.S.C. § 1101(2) & § 1127(b).

(B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and

(C) any lien voided under section 506(d) of this title;

(2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and

(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title. 11 U.S.C. § 349.

In advancing its position, the FmHA relies primarily upon paragraphs (b)(1)(C) and (b)(2) of this portion of the Bankruptcy Code. It argues that dismissal operated to vacate the order of confirmation (§ 349(b)(2)) and restore its full lien upon debtors' property (§ 349(b)(1)(C)). The argument's ultimate conclusion is that the post-confirmation dismissal of a Chapter 11 returns a debtor and its creditors to their original, pre-bankruptcy positions.

There is a certain appeal to the FmHA's arguments, especially when compared to the effect of a dismissal in traditional litigation. It is somewhat incongruous to think that notwithstanding the dismissal of a Chapter 11 both debtors and creditors would continue to be bound by the terms of a confirmed plan. Yet, bankruptcy proceedings, particularly Chapter 11 reorganizations, are not like traditional litigation where the entry of judgment resolves the disputes between the parties and ends the case. In Chapter 11, confirmation of a plan is the penultimate event, the reason for which the proceedings were begun. It is the final judgment. Theoretically, following confirmation, the reorganized and revitalized debtor emerges from bankruptcy "capable of sailing forth in the cold, cruel business world with[out] ... the protective wraps of the federal Bankruptcy Court." *In re Seminole Park and Fairgrounds, Inc.*, 502 F.2d 1011, 1014 (5th Cir.1974). Despite this, confirmation does not completely end the case. *In re Chattanooga Wholesale Antiques, Inc.*, 67 B.R. 899, 906 (Bankr.E.D.Tenn.1986). Thus, notwith-standing the fact that the goal of reorganization has been attained, the case remains open and, potentially, subject to dismissal following confirmation.

The Bankruptcy Code is not a fragmented and disconnected collection of miscellaneous rules. It is a complex tapestry of ideas. The colors and patterns that are woven into its fabric combine to compliment and reinforce each other, in order to create a single unifying theme—the equitable treatment of creditors and financial relief for over-burdened debtors. In doing so, the tensions between these seemingly inconsistent objectives have been balanced and harmonized. Consequently, Title 11's various provisions should not be viewed in isolation. Instead, their interpretation should reflect the interplay between all of its different parts, so that the Bankruptcy Code can operate as a coherent whole. The meaning given to any one portion must be consistent with the remaining provisions of the Bankruptcy Code.

There is nothing new or unique about this perception. It is merely a recognition of the fundamental principle of statutory construction which requires that a statute be interpreted in a way that will give effect to all of its different parts. *Commissioner v. Engle*, 464 U.S. 206, 223, 104 S.Ct. 597, 607, 78 L.Ed.2d 420 (1984); *Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 591–92, 7 L.Ed.2d 492 (1962); *Nupulse, Inc. v. Schlueter Co.*, 853 F.2d 545, 548–50 (7th Cir.1988). Accordingly, we must consider more than just the language of § 349(b). We must also consider the impact of the FmHA's interpretation on other provisions of the Bankruptcy Code and whether that interpretation would reinforce or undermine them.

In advancing its position, the FmHA points to the legislative history behind § 349. In discussing subsection (b), the committee reports noted that "[t]he basic purpose of the subsection is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." S.Rep. No. 989, 95th Cong., 2nd Sess. 49, U.S.Code Cong. & Ad-

min.News 1978, pp. 5787, 5835, *reprinted in* 9 Bkr–L.Ed. § 83:6, at 69 (1979). With this purpose in mind, the creditor argues that dismissal served to restore the full extent of its original lien upon debtors' property, which had been circumscribed by virtue of confirmation and § 506(d), and to vacate any order or judgment which had been entered in the case, including the order of confirmation. The FmHA reads § 349(b)(2) as referring to any order or judgment entered in the case and not just to the orders entered pursuant to the various sections specifically referred to in that sub-paragraph.

While it may have been Congress' general intention that dismissal would undo a bankruptcy, the legislative history indicates that Congress did not see dismissal as completely unwinding everything that had ever occurred. This is clearly apparent from the equivocal language used by the committee in describing the operation of § 349(b). It did not view this portion of the Bankruptcy Code as completely undoing the entire bankruptcy upon dismissal. Instead, the bankruptcy was to be undone only "as far as practicable." Thus, Congress recognized that, at least in some situations, it would not be possible or practicable to completely unwind the entire bankruptcy case and that there might be some effects which could not be reversed.

This realization is supported by the legislative history to § 349(a). While Congress sought to announce a general rule that dismissal of a bankruptcy would be without prejudice, it went on to observe:

> Of course, this subsection refers only to pre-discharge dismissals. If the debtor has already received a discharge and it is not revoked, then the debtor would be barred under section 727(a) from receiving a discharge in a subsequent liquidation for six years. *Id.* at 68.

Thus, at least where the discharge is concerned, Congress recognized that the dismissal of a case was not the equivalent of revocation. Congress saw dismissal and revocation as two separate events and acknowledged that the dismissal of the bankruptcy did not automatically carry with it the revocation of a discharge which was previously granted. Dismissal was not in-

tended to provide an avenue by which the restrictions upon revocation of a discharge could be avoided. Consequently, notwithstanding dismissal, a discharge continues to be effective and will limit the opportunity for subsequent relief under title 11. *See* 11 U.S.C. §§ 727(a)(8), 1141(d)(3)(C).

The operation of § 349(a) is not restricted to Chapter 7 cases. It applies with equal force to cases filed under Chapter 11. 11 U.S.C. § 103(b). Accordingly, post-confirmation dismissal does not affect the finality of a discharge granted under Chapter 11. *Matter of Bishop,* 74 B.R. 677, 681 (Bankr.M.D.Ga.1987). Unless separately revoked, that discharge, with all of its attendant consequences, remains effective. *Id.* at 680.

It is confirmation of a Chapter 11 plan that discharges the debtor from its obligations. 11 U.S.C. § 1141(d). For this reason revocation of the order of confirmation also requires revocation of the discharge. 11 U.S.C. § 1144. Confirmation and discharge are inseparable events. Congress specifically recognized that dismissal would not vitiate a debtor's discharge. In view of the identity between the discharge and confirmation, Congress could not have intended for dismissal to vacate the order of confirmation which created a discharge that continues to be effective.

What § 349(b) does not say is as significant as what it says. If Congress had truly intended for dismissal to completely undo the bankruptcy, as though it had never existed, it would have been simple enough to have said so explicitly. Section 349(b)(2) could then have read simply that dismissal vacates any order or judgment ever entered in the case. This is the way the FmHA would have us read it. Yet, Congress did not write this part of the Bankruptcy Code so broadly. Instead, it chose to carefully identify and refer to orders and judgments based upon specific sections of the Bankruptcy Code. The order of confirmation, pursuant to § 1129, is not among them. Had Congress meant to undo everything that had taken place in the case, these specific references would

serve no purpose and would represent useless verbiage.

The nature of the different sections of the Bankruptcy Code specifically referenced in § 349(b) is also significant. They do not refer to the final act of distribution or the ultimate disposition of property of the estate. With the exception of § 522, all of the provisions mentioned represent preliminary steps in the administration of property of the estate for the benefit of creditors. These sections provide the authority and the means by which the interests of competing claimants to property of the bankruptcy estate can be avoided.[2] These powers are designed to establish the extent and supremacy of the trustee's rights to property and to bring property into the estate so that it can be administered for the benefit of all who might have a claim against it.[3] Avoidance is but the first step in the administration, collection and ultimate distribution of property of the estate. Once this property has been gathered in or collected it must still be reduced to money before it can be distributed to creditors. *See* 11 U.S.C. § 704(1). Consequently, the avoidance of certain transfers or interests in property is merely a part of the collection process which must naturally occur before that property can be completely disposed of for the benefit of creditors.

It is noteworthy that § 349(b) does not mention or seek to reverse transfers *out* of the bankruptcy estate, such as those which might be made pursuant to § 363, § 365(f), or § 726. This would seem to indicate that § 349(b) was designed to deal only with the property that was still part of the estate on the date of dismissal. It does not attempt to deal with property which had already legitimately passed out of the bankruptcy estate. This interpretation is reinforced by the final paragraph to § 349(b) which "revests *the property of the estate* in the entity in which such property was vested immediately before the commencement of the case under this title." 11 U.S.C. § 349(b)(3) (emphasis supplied).

The proper reading of § 349(b) is to restrict its operation to the sections of the Bankruptcy Code which it specifically refers to. *Florida Peach Corp. v. Commissioner of Internal Revenue*, 90 T.C. 678 (1988); *Norton v. Hoxie State Bank*, 61 B.R. 258, 260 (D.D.Kan.1986); *In re BSL Operating Corp.*, 57 B.R. 945, 952 (Bankr. S.D.N.Y.1986). *See also U.S. v. Standard State Bank*, 91 B.R. 874, 878–79 (D.W.D. Mo.1988); *In re Genovese*, 91 B.R. 831, 834 (Bankr.E.D.Tenn.1988); *In re Newton*, 64 B.R. 790, 793 (Bankr.C.D.Ill.1986). It vacates only those orders or judgments which avoided various transfers or interests pur-

**2.** Section 506(d) voids liens against property of the estate to the extent the lien has no value or secures a claim which is not allowed. Section 510(c)(2) allows the estate to succeed to a lien that secures a claim which has been subordinated. Section 542 allows the court to compel a third party to turn property of the estate over to the trustee. Section 543 allows the court to accomplish the same result where the third party is a custodian or pre-petition receiver of property of the estate. Section 544 contains the "strong arm powers" of the trustee and establishes the status of the trustee in relation to property of the estate and third parties who claim an interest in it. Section 545 permits the avoidance of certain statutory liens so that property of the estate can be administered free from them. Section 547 authorizes the avoidance of certain pre-petition transfers of debtor's property which have the effect of preferring one creditor over others which are similarly situated. Section 548 allows the trustee to avoid transfers of debtor's property which are considered to be fraudulent because they were for less than a reasonably equivalent value or undertaken with

the intent to hinder, delay, or defraud debtor's creditors. Section 549 permits the avoidance of unauthorized post-petition transfers of property of the estate. Section 553(b) permits the avoidance of certain pre-petition setoffs of mutual claims between a debtor and a creditor, under circumstances which are very similar to preferential transfers. Section 724(a) authorizes the avoidance of a lien against property of the estate to the extent it secures a claim which does not represent compensation for a creditor's actual pecuniary loss. Section 550 simply identifies from whom avoidable transfers may be recovered and the nature of that recovery. Section 551 preserves avoided transfers for the benefit of the estate and allows the trustee to step into the shoes of the transferee.

**3.** The only exception is § 349's reference to § 522. Yet, this section deals only with exemptions and the debtor's use of the different avoiding powers in order to create exempt property and the avoidance liens upon certain types of exempt property.

suant to the powers given to a trustee or debtor-in-possession by the Bankruptcy Code. Furthermore, it operates only as to the property of the estate which remains property of the estate on the date of dismissal. *Standard State Bank*, 91 B.R. at 879; *In re Searles*, 70 B.R. 266, 270 (D.D. R.I.1987). *See also In re Technical Marine Maintenance Co.*, 169 F.2d 548, 553 (3rd Cir.1948); *BSL Operating Corp*, 57 B.R. at 952. Except to the extent that the avoidance of an interest in exempt property is concerned, avoided pre-petition interests are not reinstated as to property which has passed out of the bankruptcy estate.

One of the consequences of confirmation is the impact of a plan upon the bankruptcy estate. Except as provided in the plan, all property of the estate is vested in the debtor upon confirmation, to be dealt with and held free and clear of the claims and interests of pre-petition creditors. 11 U.S.C. § 1141(b), (c).

> Once a plan of reorganization is confirmed, the bankruptcy estate ceases to exist unless the plan specifically provides otherwise, and all estate property revests in the debtor subject to the terms and conditions imposed by the plan. *In re Grinstead*, 75 B.R. 2, 3 (Bankr.D.Minn. 1985). *See also In re Air Center, Inc.*, 48 B.R. 693, 695 (Bankr.W.D.Okla.1985).

Neither debtors' confirmed plan nor the order of confirmation attempted to restrict the effect of confirmation, in any way, where property of the estate is concerned. Thus, upon confirmation the Chapter 11 estate ceased to exist. By virtue of § 1141(b), any remaining property of the estate was transferred out of the estate and vested in the debtor. *In re Balogun*, 56 B.R. 117, 118 (Bankr.M.D.Ala.1985). *See also In re Sykes*, 53 B.R. 107 (Bankr. W.D.Va.1985).

Since the bankruptcy estate ceased to exist upon confirmation, there was no longer any property of the estate as to which § 349(b) could operate. Consequently, there was no property of the estate upon which FmHA's lien could be restored. *See Standard State Bank*, 91 B.R. at 878–79. Its collateral had passed out of the estate just as effectively and just as completely as if it had been sold to a third party. *See Newton*, 64 B.R. at 793–94.

This reading of § 349 is entirely consistent with the remaining provisions of the Bankruptcy Code, when they deal with the other effects of confirmation of a Chapter 11 plan. It is also consistent with the limitations Congress imposed upon revocation of an order of confirmation and a debtor's opportunity for a subsequent discharge. To construe an order of dismissal as also vacating the order of confirmation would severely undermine the effect that Congress gave to confirmation of a plan and the need to give finality to the act of confirmation.

Following confirmation, there is a great need for finality in a reorganized debtor's affairs. This need is fulfilled through § 1141(a), which binds both debtors and creditors to the terms of a confirmed plan. The reason for doing so "is the basic principle that business rehabilitation is the goal and that economic rehabilitation may be achieved only when there exists a certainty for future business planning." *In re Emergency Beacon Corp.*, 48 B.R. 356, 360 (D.S.D.N.Y.1985). As the Second Circuit observed when it held that the post-confirmation dismissal of a composition under the Bankruptcy Act of 1898 did not revive the original debt:

> A failing debtor who finds sufficient favor with his creditors to effect a composition under the act is thereby, in the opinion of every business man, rehabilitated, with a markedly diminished mass of liabilities. He is encouraged to go on, to obtain new credit and incur new indebtedness. If thereafter that occurs which has occurred in this case, and the debtor finds himself unable to pay both the installments of his old indebtedness represented by composition notes, and his obligations to new and confiding creditors, it is not in accord with the spirit of the act or the business sense of business men that the property which he has accumulated on his new credit should be devoted to the payment of an indebtedness which his new creditors had good reason to believe was discharged by the earlier bankruptcy. The ruling now demanded

would practically require every creditor of a person who had made a composition on time to count as a possible creditor for the full amount every one who had come into the composition. *In re Mirkus*, 289 F. 732, 736 (2nd Cir.1923). Such "uncertainty ... would render meaningless the whole purpose of a Chapter [11] proceeding." *Matter of Newport Harbor Associates*, 589 F.2d 20, 23 n. 6 (1st Cir. 1978). As Learned Hand noted; "Unless [the debtor] can assure [new creditors] as to the amount of his actual liabilities without a contingent addition of the old debts, he will start with a handicap in a race which he has already once lost." *Vogel v. Mohawk Electric Sales Co.*, 126 F.2d 759, 761 (2nd Cir.1942).

To construe the post confirmation dismissal of a Chapter 11 as also revoking or vacating the order of confirmation would not only undermine the finality Congress sought to give to confirmation but also the carefully delineated means by which an order of confirmation can be formally revoked. In § 1144 Congress created the specific means by which creditors or parties in interest can seek revocation of an order of confirmation. To do so, explicit requirements must be fulfilled. The request must be made within one-hundred eighty days after the date of confirmation and the power to revoke the order is limited to where it was obtained by fraud. "[S]ection 1144 is the only avenue for revoking confirmation of a plan of reorganization." *In re Longardner & Associates, Inc.*, 855 F.2d 455, 460 (7th Cir.1988). *See also Newport Harbor Associates*, 589 F.2d 20. Through it, fraud becomes "the sole ground for revoking confirmation...." *In re Chipwich, Inc.*, 64 B.R. 670, 678 (Bankr. S.D.N.Y.1986). *See also Emergency Beacon Corp.*, 48 B.R. 356. Thus, without a specific showing of an actual fraudulent intent there is no authority under § 1144 to revoke the order of confirmation. *Longardner*, 855 F.2d at 462.

Congress directly confronted the circumstances which it felt justified such an extreme remedy as revocation of the order of confirmation. In doing so it carefully circumscribed, both in time and by cause, the court's authority. Having confronted the

issue directly and having so closely circumscribed it, it would be anomalous if Congress had intended to permit revocation to occur indirectly and silently through § 1112(b)(8) and § 349(b).

The order of confirmation binds not only creditors but debtors as well. 11 U.S.C. § 1141(a). It is a two edged sword. While the confirmed plan may limit creditors' rights to and claims against the debtor and debtor's property, it also imposes obligations upon the reorganized debtor. Confirmation discharges the debtor of its original debts to creditors. 11 U.S.C. § 1144(d)(1). Those obligations are replaced by the obligations which the debtor undertakes pursuant to the plan. *In re Herron*, 60 B.R. 82, 84 (Bankr.W.D.La. 1986); *In re Pennsylvania Iron and Coal Co., Inc.*, 56 B.R. 492, 495 (Bankr.S.D.Ohio 1985); *In re Ernst*, 45 B.R. 700, 702 (Bankr.D.Minn.1985); *In re American Properties, Inc.*, 30 B.R. 239, 246 (Bankr.D. Kan.1983). These new commitments should not be undertaken lightly. *In re Errington*, 39 B.R. 968, 971 (Bankr.D. Minn.1984). They are not easily avoided by resorting to subsequent bankruptcy relief. *See In re Kornbluth*, 65 F.2d 400, 403 (2nd Cir.1933); *In re Smith*, 95 B.R. 468, 469 (Bankr.W.D.Ky.1988); *Bishop*, 74 B.R. at 681; *In re Northampton Corp.*, 37 B.R. 110, 115 (Bankr.E.D.Pa.1984).

Following confirmation, the reorganized debtor is required to use its property and resources to fulfill the confirmed plan and must make the payments to creditors that the plan requires. *In re Barker Medical Co., Inc.*, 55 B.R. 435, 436 (Bankr.M.D.Ala. 1985); *Air Center, Inc.*, 48 B.R. at 695. The failure to perform these obligations does not, however, revive the original, prepetition debt. *Mirkus*, 289 F. 732. *Matter of Stratton Group, Ltd.*, 12 B.R. 471, 474 (Bankr.S.D.N.Y.1981). Neither does the default justify revocation of the order of confirmation, *In re Isidor Klein, Inc.*, 22 F.2d 906, 908 (2nd Cir.1927); *Errington*, 39 B.R. at 971, or the discharge that accompanied it. *In re Curry*, 99 B.R. 409 (Bankr.C. D.Ill.1989). Instead, the creditor's remedy is to enforce the obligations contained in

the confirmed plan. *Curry,* 99 B.R. at 410; *American Properties,* 30 B.R. at 246.

With confirmation, the automatic stay is generally terminated. *Herron,* 60 B.R. at 84; *Balogun,* 56 B.R. at 119; *Ernst,* 45 B.R. at 702–03. Creditors are freed from the restrictions of § 362(a) and, in the event of a default following confirmation, are entitled to file suit in an appropriate forum based upon the terms of the plan, in order to enforce those terms just as they would any other agreement. *Curry,* 99 B.R. at 410; *Balogun,* 56 B.R. at 119; *Ernst,* 45 B.R. at 702. This remedy gives creditors the opportunity to enforce their right to receive just what they bargained for in the confirmed plan—there is no right to claim anything more. *Stratton Group, Ltd.,* 12 B.R. at 474.

A debtor's default under a confirmed plan does not revive the original debt which was restructured by the plan. That default does not vitiate either the order of confirmation or the discharge that accompanied it. Since a default, by itself, does not have these consequences, no reason presents itself why they should arise when the same default is also used as a basis for post-confirmation dismissal under § 1112(b)(8). In light of the overall structure and operation of the Bankruptcy Code and the significance given to confirmation, such a result would require a much more explicit expression of Congressional will than § 349(b) presently contains.

This court holds that the post-confirmation dismissal of a Chapter 11 case does not vacate the order of confirmation or revoke the debtor's discharge. The motion to alter or amend should be denied. An order doing so will be entered.