In re SPACE BUILDING
CORPORATION,
Debtor.

Civil Action No. 96–10587–DPW.

United States District Court,
D. Massachusetts.

Oct. 31, 1996.

Harold B. Murphy, Hanify & King, P.C., Boston, MA, for Space Building Corp.

Eric K. Bradford, Office of U.S. Trustee, Boston, MA, for Eric Bradford, U.S. Trustee.

James C. Gross, Klieman, Lyons, Schindler, Gross & Pabian, Boston, MA, for Office of Unsecured Creditors Committee.

Victor G. Milione, Peabody & Brown, Boston, MA, for WHBB Real Estate Ltd. Partnership.

## MEMORANDUM AND ORDERS

WOODLOCK, District Judge.

Debtor Space Building Corporation ("Appellant") filed this appeal requesting a modi-

fication of the Bankruptcy Court's "Order Dismissing Chapter 11 Case and Declaring the Continued Validity of the Mortgage," ("Dismissal Order") pursuant to Bankruptcy Rule 8013.[1] Appellant asserts that Judge Kenner erred as a matter of law by upholding expressly the validity of a mortgage granted to creditors pursuant to the confirmed reorganization plan but failing expressly to uphold Appellant's confirmation plan and discharge order. In opposition, the United States Trustee ("Appellee") contends that Appellant's appeal does not present this Court with a justiciable controversy because there is no live dispute concerning the continued vitality of the plan or discharge. For the reasons outlined below, I will dismiss this appeal.

## I.

Appellant is a subchapter "S" corporation wholly owned by Robert N. DiCroce. On June 2, 1993, Debtor filed a voluntary Chapter 11 bankruptcy petition. At that time, Appellant together with various non-debtor entities owed the Bank of Boston approximately $3,800,000. Appellant secured this loan by granting Bank of Boston a lien on, among other things, real property it owned. Appellant defaulted on this loan. Under a post-petition restructuring agreement, RND, Inc., a non-debtor corporation owned by DiCroce, guaranteed the Bank of Boston loan up to the amount of $3,000,000 and further secured it with a first mortgage on real property known as the Stevens Street Property. The mortgage was subsequently assigned to WHBB Real Estate Limited Partnership.

On May 23, 1995, the Bankruptcy Court entered an Order Confirming the Debtor's Second Amended Plan of Reorganization ("Confirmation Order"). Among other things, the Confirmation Order set the dead-

line for the filing of final fee applications on December 1, 1995. The Confirmation Order also directed Appellant to file its application for final decree to close the case on or before January 31, 1996.

Under the Confirmed Reorganization Plan ("the Plan"), Appellant was discharged from certain pre-petition general unsecured claims. In exchange for this discharge, RND, Inc. agreed to grant the general unsecured creditors of Debtor Appellant a second mortgage on the property known as the Stevens Street Property in the amount of $350,000. The Plan authorized the Trust through which these creditors were to be paid[2] to foreclose its mortgage on the Stevens Street Property if "... (a) the [Trust] had not received $350,000 on or before March 15, 1996 *and* (b) a Purchase and Sale Agreement to sell the Stevens Street Property which requires a sale of the property on or before June 1, 1996 is not legally effective as of March 15, 1996 ..." Brief of Appellee at 6 (emphasis in original).

On October 20, 1995, RND entered into a purchase and sale agreement to sell the Stevens Street Property to W/S Development Associates Limited Partnership for a purchase price of $5,000,000. The sale agreement granted W/S successive option periods to complete the purchase. W/S failed to make the required payment under the Sale Agreement on January 17, 1996. Thereafter, the purchase arrangement terminated.

In late November 1995, counsel for Debtor and the Creditors Committee filed a joint motion to extend the deadline for filing final application fees in order to accommodate RND's delayed sale of the Stevens Street Property.[3] At the hearing on the motion to extend, held in the bankruptcy court on December 18, 1995, Judge Kenner expressed concern and disappointment regarding Debt-

---

1. Rule 8013 empowers the district court to "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." F.R.B.P. 8013.

2. The Plan obligated Appellant to make pro rata distributions totalling $350,000 to holders of Class 5 general unsecured claims through a self executing Trust. RND agreed to secure Debtor's

Class 5 obligation by granting the Trust a mortgage on the Stevens Street Property. This mortgage was subordinate to the mortgage previously granted to Bank of Boston. (Brief of Appellee at 5.)

3. Debtor indicates that this motion was filed on November 22, 1995, while Appellee states that the motion was filed on November 28, 1995.

or's failure to consummate the confirmed Plan.[4] At the conclusion of the hearing, Judge Kenner issued an order requiring Appellant to show cause why its Chapter 11 case should not be dismissed.[5] (Record Appendix at 42.)

Appellant filed its Response to the Order to Show Cause on January 24, 1996. In its Response, Debtor "generally opposed dismissal of the case, but argued that in the event of dismissal that the Bankruptcy Court should condition dismissal upon the continuing effectiveness of (1) the Confirmation Order, (2) the Plan, (3) the Debtor's discharge, and (4) the Creditor's mortgage." The Committee filed a separate Response in which it argued that Judge Kenner should not dismiss the Chapter 11 case, but requested that if the case were dismissed, the dismissal order "clearly declare that the Creditor Mortgage remains valid and enforceable despite such dismissal . . ." *Id.* at 65.

The court entered the Dismissal Order on January 26, 1996. Pursuant to the Dismissal Order, Judge Kenner:

> ORDERED, pursuant to section 349 of the Bankruptcy Code, that the mortgage granted to the general unsecured creditors of this estate on certain real property owned by RND, Inc., a non-Debtor, which property is located on Stevens Street, Taunton, Massachusetts shall remain valid and enforceable despite this Court's dismissal of the Chapter 11 case.; and
>
> ORDERED, that this Chapter 11 case be and hereby is DISMISSED.

*Id.* at 44–45.

Appellant does not now contend that Judge Kenner erred in dismissing its Chap-

ter 11 case. Rather, Appellant asserts that because Judge Kenner expressly upheld the continuing effectiveness of the Creditor's Mortgage, and failed to do the same for the Confirmation Order, the Plan, and the Debtor's Discharge, she has committed legal error. Appellant asks this Court to modify the Dismissal Order to reflect the continued enforceability of all orders made pursuant to the confirmed Plan. Appellee, to the contrary, contends that because the "Dismissal Order did not revoke the Appellant's discharge, vacate the terms of the Plan or alter the effect of the Confirmation Order," such actions were not effected. Brief of Appellee at 9–10. Appellee agrees with Appellant that the Dismissal Order did not affect the confirmed Plan. *See id.* at 17–18. Accordingly, Appellee contends that "[n]o party in interest, and no party in this appeal, has contested the validity of the Confirmation Order, the discharge it provided to Appellant per the terms of the Plan or the Trust Mortgage," and no justiciable controversy exists for this Court to resolve. *Id.* at 11–12.

## II.

As a threshold matter, I must determine whether a justiciable controversy exists for this Court to resolve. The Constitution requires that Article III Courts adjudicate only live cases or controversies. *See* U.S. Const., Art. III, § 2, cl. 1. The First Circuit has stated that in order "[f]or [the court] to assume jurisdiction, there must be an actual, ongoing controversy between the parties." *Pustell v. Lynn Public Schools,* 18 F.3d 50, 52 (1st Cir.1994) (citations omitted). Moreover, "[s]ome indication that the controversy

---

**4.** Judge Kenner stated, in pertinent part:

> I have a real problem with this. As I understand it, the Court confirmed this case in May of 1995 and order [sic] that a final account be filed by December 1, or ordered that final fees be filed by December 1 and a final account in January of 1996. And then I received this motion to extend deadline for filing final fee applications, which basically leaves open the question of whether there's going to be any consummation of this plan for another twelve months, and I have some real problems with that. So my question is what—to the debtor, really, is what's going on here? And why wasn't this anticipated in May of 1995? Be-

cause at that point I probably would have dismissed or converted this case.

Record Appendix at 27. I note that Appellant predicated consummation of the Plan upon: (1) RND's selling the Stevens Street Property for an amount exceeding the Bank of Boston lien; (2) RND's contributing $320,500 of the proceeds to the Trust; and (3) DiCroce's contributing $30,000 to the Trust. (Brief of Appellee at 5.) Appellant does not contest that it did not effectuate the necessary events. (Brief of Appellant at 5.)

**5.** Although conversion was discussed at the hearing, Judge Kenner ultimately decided that "[c]onversion makes no sense." Record Appendix at 42.

has a concrete impact on the parties is also necessary before a case is ripe for adjudication." *Id.* (citation omitted).

Appellee contends Space Building's appeal should be dismissed for lack of jurisdiction because no party in interest has challenged the validity of the Plan, the discharge, or the Confirmation Order. Appellee argues, therefore, that Appellant's concern that the Dismissal Order does not expressly affirm its discharge pursuant to the Plan "presents the Court with a hypothetical or abstract dispute." Brief of Appellee at 11. Appellant, conversely, asserts that a controversy does exist "because appellant has challenged as an abuse of discretion, the Bankruptcy Court's failure to expressly uphold the enforceability of the Debtor's discharge ..." Appellant's Reply at 2. Further, because "Rule 8013 of the Federal Rules of Bankruptcy Procedure gives the district court broad discretion to 'affirm, modify, or reverse' a bankruptcy judge's order or to 'remand with instructions' for further proceedings," Appellant urges this Court to modify Judge Kenner's Dismissal Order. *Id.*

I will first address whether there is an actual, ongoing controversy between the parties. Appellee argues that there is no actual controversy because neither it, nor any other party in interest, has contested the validity of the Confirmation Order, or any other order made pursuant to the confirmed Plan. (Brief of Appellee at 11) Because no attack has been mounted, if I were to resolve the question presented, the argument goes, I would be issuing an advisory opinion. *Cf. Pustell,* 18 F.3d at 52 ("If, for example, the record indicated that the town of Lynn never planned to take action against the Pustells ... we arguably would be put in the position of issuing an advisory opinion.").

▮ The Supreme Court enunciated the criteria that make a case ripe for adjudication in *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The Court there stated that "the

problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149, 87 S.Ct. at 1515. For an issue to be appropriate for judicial review, it should be "purely legal" and "final." *Id.* Additionally, the impact of the challenged action must be "sufficiently direct and immediate." *Id.* at 152, 87 S.Ct. at 1517.[6] The issue presented in this appeal does not meet these requirements and is not ripe for adjudication.

As an initial matter, I note that the question presented is not purely legal. Even assuming that fairly to modify or clarify the Dismissal Order were "purely legal" and "final" action, however, it clearly fails the hardship prong of the test. The consequence of withholding court consideration, i.e., keeping the Order in its present form, will not affect either the Debtor, or any of its creditors. Unlike *Abbott Laboratories,* there is no indication here that affected parties will have to choose between costly compliance and prosecutable noncompliance. *Cf. id.* at 152–53, 87 S.Ct. at 1517–18.

There will not even be an indirect dilemma if I withhold judicial consideration in this case. In fact, the remote possibility of a creditor collaterally attacking the Debtor's discharge presents no threat. This conclusion is supported by substantial caselaw which holds that, unless revoked expressly, orders made pursuant to a confirmed Plan remain enforceable despite dismissal of the underlying Chapter 11 case. I will briefly outline the effects of confirmation and dismissal, as well as the corresponding Bankruptcy Code provisions, to demonstrate that the Dismissal Order at issue does not have a "direct and immediate" impact on the parties.

## A. The Effects of Confirmation

▮ Pursuant to section 1141 of the Bankruptcy Code, confirmation of a Chapter 11 Plan: (1) discharges a nonliquidating

---

**6.** The regulations at issue in *Abbott Laboratories* "purport[ed] to give an authoritative interpretation of a statutory provision that has a direct effect on the day-to-day business of all prescription drug companies; its promulgation puts peti-

tioners in a dilemma ..." *Id.* By contrast, the Dismissal Order in the present case does not affect the day-to-day business of Debtor or its creditors.

debtor's pre-confirmation debts; (2) restructures creditors' claims as provided in the plan; (3) vests property of the estate in the debtor free and clear of all liens, except as provided in the Plan; (4) terminates the automatic stay of any act against estate property and binds a debtor and its creditors. *See* 11 U.S.C. § 1141;[7] *Matter of Penrod,* 169 B.R. 910, 916 (Bankr.N.D.Ind.1994), *appeal decided by* 50 F.3d 459 (7th Cir.1995) ("The plan is essentially a new and binding contract ... between the debtors and their preconfirmation creditors."); *In re Curry,* 99 B.R. 409, 411 (Bankr.C.D.Ill.1989). The Order of Confirmation of the Bankruptcy Court has binding effect and is res judicata. *See Stoll v. Gottlieb,* 305 U.S. 165, 170–71, 59 S.Ct. 134, 136–37, 83 L.Ed. 104 (1938); *In re Heritage Hotel Partnership I,* 160 B.R. 374, 377 (9th Cir. BAP 1993), *aff'd* 59 F.3d 175, 1995 WL 369528 (9th Cir.1995) ("It is now well-settled that a bankruptcy court's confirmation order is a binding, final order, accorded full res judicata effect ..."). Under this analysis, Judge Kenner's Confirmation Order, issued on May 23, 1995, remains binding on both Appellant and Appellee.

## B. Revocation of Confirmation

■ Because of its res judicata effect, a confirmed Plan is not vulnerable to collateral attack. *See In re Barton Indus., Inc.,* 159 B.R. 954, 958 (Bankr.W.D.Okla.1993). The only way a Confirmation Order can be revoked is in accordance with 11 U.S.C. § 1144. This requires a showing that the Order was procured by fraud. *See* 11 U.S.C. § 1144.[8]

---

**7.** Section 1141 states, in pertinent part:

(a) Except as provided ... the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, any creditor, equity security holder, or general partner in, the debtor, whether or not such creditor ... has accepted the plan.
(b) Except as provided ... the confirmation of a plan vests all of the property of the estate in the debtor.
(c) Except as provided ... after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors....
11 U.S.C. § 1141.

**8.** Section 1144 states:

Section 1144 also requires that the complaint must be filed within 180 days of the entry of the Confirmation Order, and "courts have held uniformly that strict compliance with section 1144 is a prerequisite to relief." *In re Orange Tree Associates, Ltd.,* 961 F.2d 1445, 1447 (9th Cir.1992). *See also In re Longardner & Associates, Inc.,* 855 F.2d 455, 460–61 (7th Cir.1988), *cert. denied* 489 U.S. 1015, 109 S.Ct. 1130, 103 L.Ed.2d 191 (1989); *In re Winom Tool and Die, Inc.,* 173 B.R. 613, 616 (Bankr.E.D.Mich.1994); *In re Nardulli & Sons Co., Inc.,* 66 B.R. 871, 881 (Bankr.W.D.Pa.1986), *appeal decided by General Electric Credit Corp. v. Nardulli & Sons, Inc.,* 836 F.2d 184 (3d Cir.1988).

■ In the present action, Appellant does not make any allegations that the Confirmation Order was procured by fraud. In fact, Appellant does not contest the fact that Judge Kenner correctly dismissed its Chapter 11 case. Appellant merely asks that the Dismissal Order be made more explicit in its affirmance of the continued enforceability of the Confirmation Order, the Plan, and the Debtor's Discharge. Because no fraud is alleged, the criteria of § 1144 are not met and the Confirmation Order is not revoked.

## C. Effects of Dismissal

A bankruptcy judge may dismiss a Chapter 11 case if dismissal is in the best interests of the creditors and the estate. 11 U.S.C. § 1112.[9] Section 349(b) of the Bankruptcy Code specifies the effect of dismissal of a

---

On request of a party in interest at any time before 180 days after the date of entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud.
11 U.S.C. § 1144.

**9.** Section 1112 of the Bankruptcy Code provides:

(b) ... the court may convert a case under this chapter ... or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—
(2) inability to effectuate a plan; ...
(7) inability to effectuate substantial consummation of a confirmed plan; ...
(8) material default by the debtor with respect to a confirmed plan.
11 U.S.C. § 1112(b).

Debtor's Chapter 11 case.[10] Despite some seemingly broad statements of expansive general effect,[11] most courts have cabined section 349(b)'s application to Bankruptcy Court orders that are specifically identified in the statute. *See Matter of Mulberry Chesterton Inn*, 142 B.R. 566, 567 (Bankr. S.D.Ga.1992) ("courts have refused to extend the reinstatement effect of Section 349(b) beyond its expressly enumerated provisions.") (citation omitted); *In re Depew*, 115 B.R. 965, 970–71 (Bankr.N.D.Ind.1989) ("What § 349(b) does not say is as significant as what is says. If Congress had truly intended for dismissal to completely undo the bankruptcy, as though it had never existed, it would have been simple enough to have said so explicitly."); *In re Searles*, 70 B.R. 266, 270 (Bankr.D.R.I.1987) (order not specifically named in § 349(b), "by negative implication," is not vacated by dismissal of bankruptcy case).

More specifically, courts which have considered whether dismissal or conversion of a Chapter 11 case revokes a confirmed Plan, consistently have determined that it does not. For example, in *Depew*, the court stated that "[t]he postconfirmation dismissal of a Chapter 11 does not affect the finality of the confirmation order or the discharge that goes with it." *Depew*, 115 B.R. at 967. The *Depew* court reasoned that:

It is confirmation of a Chapter 11 plan that discharges the debtor from its obligations. 11 U.S.C. § 1141(d). For this reason revocation of the order of confirmation also requires revocation of the discharge. 11 U.S.C. § 1144. Confirmation and discharge are inseparable events. Congress specifically recognized that dismissal would not vitiate a debtor's discharge. In view of the identity between the discharge and confirmation, Congress could not have intended for dismissal to vacate the order of confirmation which created a discharge that continues to be effective.

*Id.* at 970. Accordingly, the court held that "the postconfirmation dismissal of a Chapter 11 case does not vacate the order of confirmation or revoke the debtor's discharge." *Id.* at 974. *See also In re Burner Services & Combustion Control Co., Inc.*, 1991 WL 30160, at *3 n. 2 (Bankr.D.Minn.1991); *In re Cronk*, 124 B.R. 759, 760 (Bankr.N.D.Ill. 1990) ("Section 349 leaves the Discharge Order unaffected."); *Matter of Bishop*, 74 B.R. 677, 681 (Bankr.M.D.Ga.1987) (dismissal of debtor's Chapter 11 case does not effect finality of debtor's discharge).

There is only a very slight chance that a creditor would even attempt to attack Debtor's discharge collaterally.[12] More importantly, such an attack would most likely be unsuccessful.[13] Therefore, there is no "indi-

---

**10.** Section 349 states, in pertinent part:

(b) ... Unless the court, for cause, orders otherwise, a dismissal of a case ...

(1) reinstates—

(A) any proceeding or custodianship superseded under section 543 of this title;

(B) any transfer avoided ...; and

(C) any lien ...;

(2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and

(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C. § 349(b).

**11.** *See In re Newton*, 64 B.R. 790, 793 (Bankr. C.D.Ill.1986). *See also In re Derrick*, 190 B.R. 346, 350–51 (Bankr.W.D.Wis.1995). "Section 349(b) expresses the general rule that to the extent possible a dismissal of a petition reverses what has transpired during a bankruptcy. The basic purpose of the subsection is to undo the bankruptcy case, as far as practicable...."

**12.** I do note that *In re Derrick*, 190 B.R. 346 (Bankr.W.D.Wis.1995), holds that § 349 acts to reinstate a lien avoided preconfirmation unless the court, for cause, orders otherwise. *See id.* at 354. *Derrick* rejects the reasoning applied in *Depew* stating that "the appropriate analysis of post-confirmation dismissals" involves "protecting the interests of other creditors ..." *Id.* at 353. While Derrick emphasizes the broad scope of § 349, I do not find it persuasive in this case because at issue in *Derrick* was the continued enforceability of a specific lien. The issue currently before me, however, involves the continued enforceability of the entire confirmed Plan.

**13.** The Appellant contends that because there "is no controlling law in this circuit directly on point on this issue," the Confirmation Order remains subject to collateral attack. Appellant's Reply, at 3. Appellant cites *In re Mulberry Chesterton Inn, L.P.*, 142 B.R. 566 (Bankr.S.D.Ga. 1992), for the proposition that collateral attacks of a final bankruptcy order give "sufficient justification for modification of an order of dismissal." Appellant's Reply, at 3. That case is easily

cation that the controversy has a concrete impact on the parties" and so it is not ripe for adjudication. I therefore must dismiss this appeal for lack of jurisdiction.

### III.

The law of appeals is straightforward in the First Circuit. An appellate court "reviews judgments, not statements." *In re Administrative Warrant*, 585 F.2d 1152, 1153 (1st Cir.1978). Even less compelling for appellate review is the failure to make a statement not necessary to the judgment. Expressly to uphold discharge was unnecessary—indeed would have been redundant—to the judgment of dismissal entered in the bankruptcy court. The appeal fails for want of an appealable order or judgment to which Appellant objects. For the reasons set forth more fully above, this appeal is **DISMISSED**.

distinguishable, however, because it involved a determination of whether a subrogation ruling made pursuant to an adversary proceeding remained in full force and effect after the dismissal of the Chapter 11 case. In *Mulberry*, the non-moving party argued that the subrogation agreement should be voided. *See id.* at 567. In this case, by contrast, there is no question regarding the status of the Confirmation Order, and no party in interest has attacked the validity of that Order. Therefore, I do not find Appellant's reliance on *Mulberry* persuasive.