482 S.E.2d 564

**McNAUGHTON–McKAY ELECTRIC CO. OF N.C., INC., Respondent,**

v.

**Peter A. ANDRICH d/b/a Carolina Advanced Technologies, Appellant.**

**No. 2593.**

Court of Appeals of South Carolina.

Submitted Oct. 8, 1996.

Filed Nov. 25, 1996.

Refiled Jan. 20, 1997.

Walter L. Heinsohn, Rock Hill, for appellant.

Lucy L. McDow, Rock Hill, for respondent.

HOWARD, Judge:

McNaughton–McKay Electric Co. of NC, Inc. (McNaughton) sued Peter A. Andrich (Andrich) d/b/a Carolina Advanced Technologies, Inc. (C.A.T.) for failure to pay a debt. The trial court granted McNaughton's motion for summary judgment because an earlier bankruptcy proceeding determined Andrich

owed the debt. Andrich appeals. We affirm as modified and remand.[1]

## I. FACTS

Andrich was the president of C.A.T., a now dissolved South Carolina corporation. C.A.T. ordered equipment from McNaughton. After C.A.T. failed to pay the debt, McNaughton sued Andrich and C.A.T. After filing suit, McNaughton discovered Andrich and his wife had filed Chapter 11 bankruptcy and, therefore, McNaughton's suit against Andrich was stayed. McNaughton intervened as a creditor in the bankruptcy proceeding and Andrich's Amended Plan of Reorganization listed McNaughton as an unsecured creditor with a claim in the amount of $7,380. The plan provided that Andrich would pay $3,690, half the amount of the unsecured claims, in quarterly installments beginning after confirmation of the plan. The bankruptcy court confirmed Andrich's proposed plan.[2] Subsequently, Andrich filed a Motion to Modify Debtor's Confirmed Plan of Reorganization. In his motion, Andrich stated he and McNaughton had compromised the debt because Andrich had returned equipment to McNaughton and, in exchange, McNaughton forgave the debt. The bankruptcy court denied Andrich's motion to modify the bankruptcy plan.

Andrich failed to make payments to McNaughton as called for under the plan. Eventually, upon McNaughton's motion, Andrich's bankruptcy case was dismissed without the discharge of debts.[3] Thereafter, McNaughton restored this case against Andrich to the Court of Common Pleas docket. In his answer, Andrich claimed he was not personally liable for the corporate debt. Thereafter, McNaughton moved for, and was granted, summary judgment on the basis that res judicata prevented Andrich from denying personal liability of the debt

---

1. Because oral argument would not aid the court in resolving any issue on appeal, we decide this case without it pursuant to Rule 215, SCACR.

2. *See* 11 U.S.C. § 1129 (1988).

3. *See* 11 U.S.C. § 1112 (1988) (a party in interest may request dismissal of a bankruptcy case for cause including unreasonable delay by the debtor that is prejudicial to creditors).

to McNaughton. The lower court found that the same issue between identical parties was finally adjudicated in the bankruptcy court proceeding.

## II. SCOPE OF REVIEW

Summary judgment is proper when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP. Summary judgment should be granted when plain, palpable, and undisputable facts exist on which reasonable minds cannot differ. *Trico Surveying, Inc. v. Godley Auction Co.*, 314 S.C. 542, 431 S.E.2d 565 (1993). In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Koester v. Carolina Rental Ctr.*, 313 S.C. 490, 443 S.E.2d 392 (1994).

## III. LAW/ANALYSIS

### A. RES JUDICATA

On appeal, Andrich claims the trial court erred in granting summary judgment because he is not personally liable for the debt owed to McNaughton. McNaughton argues Andrich is barred from relitigating the issue of liability for the debt because the bankruptcy court's determination that Andrich owed the debt conclusively resolved all the issues. We agree.

Collateral estoppel will bar the relitigation of an issue which was actually litigated and necessary to the outcome of a prior lawsuit. *In re Harborview Dev. 1986 Ltd. Partnership*, 149 B.R. 378 (Bankr.D.S.C.1993) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)). Furthermore, in the context of bankruptcy matters, the elements required for collateral estoppel to apply are: (1) the same issue; (2) was actually litigated; (3) determined by a valid and final judgment; and (4) such determination was essential to the prior judgment. *Harborview*, 149 B.R. at 380–81.

■ "[A] final judgment for purposes of res judicata must finally dispose of some matter which under the substantive law to be applied and the procedural law of the forum can be, and has been, finally disposed of." *Republic Supply Co. v. Shoaf,* 815 F.2d 1046, 1053 (5th Cir.1987) (quoting *Southmark Properties v. Charles House Corp.,* 742 F.2d 862, 870 n. 10 (5th Cir.1984)). In *Shoaf,* the court determined an issue not actually litigated was disposed of when the bankruptcy court confirmed the debtor's reorganization plan and, thus, was a final judgment on the merits. *Shoaf* at 1053.

"The general rule is that a confirmed plan of reorganization is binding on the debtor and other proponents of the plan." *Paul v. Monts,* 906 F.2d 1468, 1471 (10th Cir.1990); *see* 11 U.S.C. § 1141 (1988) (the provisions of a confirmed plan bind the debtor and the creditor). The basis for this reasoning is that a "litigant is required to be consistent in his conduct. He may not maintain a position regarding a transaction wholly inconsistent with his previous acts in connection with that same transaction." *Paul,* 906 F.2d at 1473.

> It is important to bear in mind that the bankruptcy tribunal has always been a federal district court, which is a court of authority and power.... A judgment or order in a bankruptcy litigation is a judgment or order of the district court, whether it is rendered by a district judge or by a bankruptcy judge, and as such it is entitled to the same respect that would be afforded to any other judgment or order of the district court. As a general proposition, then, the finality doctrines apply in bankruptcy cases in the same fashion in which they apply elsewhere.

1B J. Moore, Moore's Federal Practice ¶ 0.419[3.–2], at 430 (2d ed. 1983).

> [J]udgments of the bankruptcy courts are normally immune to collateral attack. They can be relied upon by state courts. And when the judgment is final and valid, it is given appropriate effect as res judicata or as a collateral estoppel in subsequent proceedings in the state courts, where it is there entitled to full faith and credit.

*Id.* at 434–35.

A very broad preclusive effect has been given to orders confirming reorganization plans. *See, e.g., U.S. Dept. of Air*

*Force v. Carolina Parachute Corp.*, 907 F.2d 1469, 1473–74 (4th Cir.1990).

In this case, the previous bankruptcy case confirmed Andrich's reorganization plan in which Andrich admitted owing McNaughton the original sum of $7,380. Therefore, Andrich is barred from relitigating the issue of whether he owed the debt to McNaughton.

## B. AMOUNT OF JUDGMENT

■ Finally, Andrich claims if this court determines he is liable for the debt, then he is liable for only half of the debt because if res judicata applies to him, then res judicata applies to the determination of the amount he owes. McNaughton argues it should receive full payment of the debt because it was only willing to accept a 50% payback under Andrich's bankruptcy plan in order to avoid the risks and costs of collecting the debt in a suit such as this.

■ Bankruptcy courts distinguish between confirmed and unconfirmed plans of reorganization. Because "confirmation binds both debtors and creditors to the terms of a confirmed plan, it effectively replaces debtors' pre-petition obligations to creditors, which were discharged, with the obligations to those creditors set forth in the confirmed plan." *In the Matter of Depew*, 115 B.R. 965, 966 (Bankr.N.D.Ind.1989). Post-confirmation of a reorganization plan, the only way to restore a debtor's original obligations to creditors is to revoke the order of confirmation and with it the debtor's discharge. *Id.* at 966–67. However, an order of confirmation can be revoked only in limited circumstances. *Id.* at 967; *see In re Curry*, 99 B.R. 409, 410 (Bankr.C.D.Ill.1989) (holding that under confirmed Chapter 11 plan unsecured creditor's remedy was to sue to enforce debtors' obligations out of the bankruptcy proceeding, rather than seeking revocation of discharge of the original debt).

In *Depew*, the Farmers Home Administration (FmHA) asked the bankruptcy court to dismiss the case because Depew had failed to make the periodic payments as required by the terms of the confirmed plan. *Depew*, 115 B.R. at 966. In addition to dismissing the case, FmHA asked the court to revoke the order confirming the plan and with it the debtor's

discharge. *Id.* at 966–67. However, the court refused to do this because the revocation request must be made within 180 days of the entry of the order of confirmation and may only be granted if the order of confirmation was procured by fraud. *Id.* at 967.

The *Depew* court determined that it had been more than 180 days since the entry of the confirmation order and there was no evidence of fraud. *Id.* The court reasoned,

[W]e are confronted only with the situation in which subsequent events have demonstrated that the debtors are not able to fulfill the obligations the confirmed plan has imposed upon them. The inability to fulfill a confirmed plan is very different from having obtained confirmation through fraud. It does not justify revocation of the confirmation order.

So long as the order of confirmation stands, it must have the effect given it by the Bankruptcy Code—binding both debtors and creditors to its terms and discharging debtors' pre-petition obligations. The post-confirmation dismissal of a Chapter 11 does not affect the finality of the confirmation order or the discharge that goes with it. Both are effective "without regard to whether the debtor pays according to the plan or not." Thus, although this case will be dismissed, dismissal does not revoke debtors' discharge and their obligations to creditors, as set forth in the confirmed plan, remain unaltered.

*Id.* at 967–68 (citations omitted).

The *Depew* court went on to note the effect of dismissal in a bankruptcy case was very different from the dismissal in traditional litigation.

It is somewhat incongruous to think that notwithstanding the dismissal of a Chapter 11 both debtors and creditors would continue to be bound by the terms of a confirmed plan. Yet, bankruptcy proceedings, particularly Chapter 11 reorganizations, are not like traditional litigation where the entry of judgment resolves the disputes between the parties and ends the case. In Chapter 11, confirmation of a plan is the penultimate event, the reason for which the proceedings were begun. It is the final judgment.

*Id.* at 969.

FmHA argued that because the bankruptcy case was dismissed, the original amount of its lien should have been

restored. *Id.* at 970. However, the bankruptcy court held "post-confirmation dismissal does not affect the finality of a discharge granted under Chapter 11. Unless separately revoked, that discharge, with all of its attendant consequences, remains effective. It is confirmation of a Chapter 11 plan that discharges the debtor from its obligations." *Id.* (citation omitted).

■ Therefore, the debtor's original obligations are replaced by the obligations under the confirmed bankruptcy plan. *Id.* at 973. "The failure to perform these obligations does not, however, revive the original, pre-petition debt. Neither does the default justify revocation of the order of confirmation or the discharge that accompanied it. *Instead, the creditor's remedy is to enforce the obligations contained in the confirmed plan.*" *Id.* at 973–74 (citations omitted) (emphasis added).

The confirmed plan recognized Andrich's debt to McNaughton to be $7,380, but the plan required Andrich to pay 50% of the claim, or $3,690. For the reasons stated above, this was a final determination of the amount Andrich owed to McNaughton. Therefore, the trial court's order requiring Andrich to pay McNaughton is modified from $7,380 to the $3,690 as provided in the confirmation plan.

■ The trial court awarded pre-judgment interest with a calculation based upon the judgment amount of $7,380. The issue of pre-judgment interest and the amount thereof was not raised on appeal. Thus, McNaughton's entitlement to pre-judgment interest as determined by the trial court is the law of the case. We therefore remand for a re-calculation of pre-judgment interest based upon the modified debt amount of $3,690.

Accordingly, the trial court's order is

**AFFIRMED AS MODIFIED AND REMANDED.**

HOWELL, C.J., and HUFF, J., concur.