

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>Ashley Susan Aarons,<br><br>         Debtor. | BAP No. CC-22-1170-SGF<br><br>Bk. No. 2:19-bk-18316-NB |
| Ashley Susan Aarons,<br>         Appellant,<br>v.<br>Patch of Land Lending, LLC; FCI Lender Services, Inc.; California TD Specialists; Versus Residential LoanCo, LLC,<br>         Appellees. | Adv. No. 2:22-ap-01008-NB<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Neil W. Bason, Bankruptcy Judge, Presiding

Before: SPRAKER, GAN, and FARIS, Bankruptcy Judges.

## INTRODUCTION

Ashley Susan Aarons believed that her secured creditor improperly calculated the balance owed on its secured loan and pursued foreclosure in violation of federal and state law. Aarons filed for chapter 11[1] relief and

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the

settled her claims with the secured creditor. She incorporated the settlement into her confirmed chapter 11 plan. Post-confirmation the bankruptcy court converted her case to chapter 7. Aarons then sued the secured lender in state court to quiet title, cancel the recorded documents setting the foreclosure in motion, and recover damages for wrongful foreclosure. The lender removed the action to the bankruptcy court and moved to dismiss it under Civil Rule 12(b)(6), made applicable by Rule 7012. The bankruptcy court granted the lender's dismissal motion without leave to amend. We agree with the bankruptcy court that the settlement precluded any claims based on the lender's pre-confirmation conduct, and any potentially surviving claims belonged to the bankruptcy estate, not to Aarons. Therefore, we AFFIRM.

## FACTS[2]

### A.    The parties and their roles in the loan transaction.

Patch of Land Lending, LLC ("Patch") loaned Aarons' family trust $3,000,000, evidenced by a promissory note requiring interest-only payments and maturing on April 1, 2020. Aarons, on behalf of the trust, executed a deed of trust to secure the loan, which encumbered real

---

Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case and adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

property located on Bel Air Road in Los Angeles ("Bel Air Property"). Aarons personally guaranteed the loan. Patch thereafter sold and assigned its loan and lien rights to Wilmington Savings Fund Society, as trustee for a mortgage pool trust owned or controlled by Invictus Residential Pooler Trust 3A. In turn, Invictus sold and assigned its rights to the Verus Securitization Trust 2020-NPL1. Notwithstanding these assignments, Patch retained the servicing rights for the loan, and FCI Lender Services became the sub-servicer.

**B.    Default, bankruptcy, and burgeoning disputes between the parties.**

By January 2019, the loan was in default, with payments in arrears of $73,168. Aarons alleges that she tendered $73,200 to pay the delinquency but Patch refused to apply the payment and placed it in a suspense account instead. Aarons contends that as a result Patch wrongfully calculated the balance of the loan and improperly charged interest and other fees. On February 1, 2019, Patch issued a notice of default.

Aarons filed her chapter 11 petition in June 2019. Through various filings in the bankruptcy court, Aarons and Patch skirmished over their respective rights and duties. In November 2019, Aarons filed a motion challenging the validity and amount of Patch's secured claim and contended that the lender had applied an improper interest rate, charged improper interest and late charges, had violated multiple consumer finance and usury laws, wrongfully interfered with Aarons' attempts to refinance the Bel Air Property, incorrectly accounted for the loan, and improperly

3

failed to credit her for the $73,200 payment.

In December 2019, Patch timely filed a proof of claim for $3,354,858.00 due and owing as of the petition date. In addition, in February 2020, Wilmington on behalf of Invictus filed a motion for relief from stay. Among other things, Wilmington obtained partial relief from stay permitting it to issue a new notice of default (collectively, "NODs") and a notice of trustee's sale ("NOTS") against the Bel Air Property. California TD Specialists is identified as the successor trustee in the NOD recorded in June 2020 against the Bel Air Property.

## C.    Settlement and plan confirmation.

In the spring and summer of 2020, the parties negotiated a tentative settlement resolving the issues relating to the loan and Patch's secured claim. The settlement was executed in September 2020 and attached to the brief Aarons filed in support of confirmation of her proposed plan. This agreement was supplemented and amended by four addenda, though none of the addenda terms are pertinent to this appeal.

The settlement treated Aarons' November 2019 motion as an objection to Patch's December 2019 proof of secured claim. According to Patch, by the time the original settlement was executed, Aarons owed it over $4,000,000 (including all interest, fees, and charges). The key terms of the settlement included the following:

- Reduction of Patch's secured claim from $4,006,291.07 (as of June 1, 2020) to a "New Principal Balance" of $3,432,916.07.

4

- Reinstatement of the loan as "current" with a 7.5% nondefault interest rate as specified in the note and a default rate of 18% as specified in the note.

- Extension of the loan's maturity date to April 1, 2021, at which point the entire outstanding loan balance would be due.

- Monthly interest-only payments of $21,455.73, to be paid until full satisfaction of the debt.

- Treatment of Aarons' 2019 $73,200 payment as a reserve to be applied to satisfy the first three months of interest only payments, plus estimated real property taxes and part of the fourth monthly interest payment.

- A $60,000 fee for extension of the new maturity date for up to six months, subject to waiver under certain conditions.

In exchange for these new loan terms, Aarons granted Patch, FCI, Wilmington, and their successors, assigns, agents, and other representatives a very broad release of all then-existing claims she held against them.

In her own words, Aarons stated, "the settlement reached will result in substantial benefit for my bankruptcy estate and its creditors." According to Aarons, the settlement gave her breathing room from the secured debt obligations she owed to Patch and enabled her to refinance or sell the Bel Air Property to help fund her plan. She further predicted: "[i]f the Plan is not approved, I will lose this favorable opportunity to generate

funds from the Bel Air Property and more importantly, I will lose the Bel Air Property to a foreclosure sale."

The final version of the settlement, with all addenda, was made a part of Aarons' plan and was approved under Rule 9019 during the confirmation proceedings. The settlement became effective in February 2021—shortly after the bankruptcy court entered its order confirming Aarons' plan. By the time Aarons confirmed her plan and the settlement became effective, she had two months remaining before the note matured under the settlement.

On April 13, 2021, Aarons requested a six-month extension of the maturity date. The record does not include any response to the request for extension, but Aarons' subsequent request for forbearance was denied, and on August 11, 2021(more than six months after the maturity date under the settlement), a notice of default was recorded.

## D. Plan default, conversion to chapter 7, and Aarons' complaint.

Aarons neither sold nor refinanced the Bel Air Property, and her case was converted to chapter 7 on October 18, 2021. In accordance with the terms of the plan and the conversion order, her property as the reorganized debtor vested in the chapter 7 estate, except for property that would have been excluded from the estate if the case always had been under chapter 7.

Several months after the conversion of the bankruptcy to chapter 7, Aarons filed a complaint in state court to quiet title to the Bel Air Property, for cancellation of the recorded NODs and NOTS, and for wrongful

6

foreclosure.[3] The complaint named Patch, FCI, TD, and Verus as defendants (collectively, the "Patch Defendants"). Though the foreclosure had not yet occurred, many allegations read as if it had. The allegations are wide ranging and span the years from 2019 to 2022, including the alleged refusal to credit her loan account for the $73,200 she had paid to bring her loan current. Many of these allegations complain about events that were prior to, and the subject of, the settlement. Some of the allegations, however, occurred after confirmation and prior to conversion of the bankruptcy. Aarons also included in her allegations the post-conversion NOTS and stated that she requested a loan modification after the post-conversion NOTS. The complaint, however, omits any reference to the settlement, the release of Aarons' claims, or the revesting of her property in the bankruptcy estate upon conversion.

E.     **Removal of the complaint and the motion to dismiss.**

The Patch Defendants removed the state court complaint to the bankruptcy court and moved to dismiss it under Civil Rule 12(b)(6). According to the Patch Defendants, the causes of action in the complaint belonged to Aarons' chapter 7 estate and only could be pursued by the

---

[3] In her cause of action to quiet title, Aarons essentially alleged that the Patch Defendants' misconduct entitled her to consequential damages and to have title to the Bel Air Property quieted in the name of the Ashley S. Aarons 2015 Trust Dated May 15, 2015. In her cause of action for cancellation of instrument(s), Aarons further alleged that the recorded NODs and NOTS were invalid and should be cancelled. Based on the same allegations of misconduct and defective instruments, Aarons maintained in her cause of action for wrongful foreclosure that she was entitled to recover damages.

chapter 7 trustee. As for Aarons' key allegations, the Patch Defendants asserted that they were precluded by the plain and unambiguous terms of the settlement because it released all causes of action that had accrued before confirmation. With respect to the merits of Aarons' assertions of post-confirmation malfeasance, the Patch Defendants maintained that they properly calculated the amounts stated consistent with the settlement terms so the amounts were neither false nor fraudulent.

Meanwhile, Aarons unsuccessfully sought a temporary restraining order. The foreclosure occurred on March 30, 2022.

Aarons opposed the motion to dismiss. In response to the Patch Defendants' arguments, she maintained that under the "person aggrieved" standard historically applied by the Ninth Circuit in relation to bankruptcy appeals, she had standing to pursue the causes of action based on her pecuniary interest in the proceeds and equity in the Bel Air Property. As for the contention that she had released the claims stated in her complaint, she insisted that the terms of the settlement and the plan were ineffective because the plan never was fully consummated. In other words, because she failed to perform her plan obligations and the case was converted to chapter 7, she maintained that the settlement and the chapter 11 plan were ineffective and non-binding.[4]

---

[4] Aarons also stated in her opposition that she was fraudulently induced to enter into the settlement and plan. The bankruptcy court rejected this argument, and she has abandoned it on appeal.

## F.    The bankruptcy court's ruling.

The bankruptcy court ruled that dismissal was appropriate and leave to amend would be futile. It agreed that any claims belonging to Aarons that arose before confirmation of the plan were released by the settlement incorporated into the plan. The court rejected Aarons' argument that the settlement and plan were ineffective, noting that she had failed to obtain financing or make the monthly payments required under the settlement. Nor was there any authority to support her contention that she could, by her own breach, render the settlement and plan ineffective. As the court aptly observed: "Such a conclusion would make all settlements and all resolutions of disputed issues in any chapter 11 plan meaningless because they would be terminable at will by the settling party, simply by choosing not to perform."

The court additionally held that the claims asserted were assets of the chapter 7 estate. This result was dictated by the express provisions of the court's confirmation order and its order converting the case to chapter 7. Both orders stated that any property belonging to the reorganized debtor (except possibly for any property subject to valid exemption) would become property of the estate upon conversion. This included any post-confirmation claims that existed prior to conversion. Because the chapter 7 estate owned the Bel Air Property, and all claims related to it, the court held that Aarons lacked standing to pursue the claims against the Patch Defendants.

The bankruptcy court also concluded that leave to amend was futile.[5] It reasoned that Aarons could not plead around the release of claims or the estate's ownership of any post-confirmation claims. For these reasons, the court dismissed the claims with prejudice.

The bankruptcy court entered its judgment of dismissal with prejudice on August 8, 2022. Aarons timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (C). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.      Did the bankruptcy court commit reversible error when it dismissed Aarons' claims for relief?

2.      Did the bankruptcy court abuse its discretion when it denied Aarons leave to amend?

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's order granting a Civil

---

[5] The bankruptcy court also held that dismissal was appropriate because the complaint failed to state claims for which relief could be granted. It noted that the complaint failed to explain what balances or calculations were incorrect, or why they were so material as to justify the relief she sought. The bankruptcy court repeatedly noted that the debt matured prior to conversion and Aarons failed to meet her obligations under the plan. Because we agree with the bankruptcy court that all claims based on pre-confirmation activity have been released and the estate owns any claims related to the Bel Air Property, we need not address the alternate basis adopted by the bankruptcy court and whether the complaint could have been amended to address those deficiencies.

Rule 12(b)(6) motion to dismiss. *See Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1079 (9th Cir. 2005). When we review a matter de novo, we consider the matter anew, as if it were not previously decided by the bankruptcy court. *Mele v. Mele (In re Mele)*, 501 B.R. 357, 362 (9th Cir. BAP 2013).

Generally, we review the bankruptcy court's denial of leave to amend for an abuse of discretion. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990). The bankruptcy court abused its discretion if it applied an incorrect legal rule or its factual findings were illogical, implausible, or without support in the record. *TrafficSchool.com v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

### A.  Civil Rule 12(b)(6) standards.

When we review an order granting a Civil Rule 12(b)(6) motion, we consider the legal sufficiency of the plaintiff's complaint. *See Johnson v. Riverside Healthcare Sys.*, LP, 534 F.3d 1116, 1121–22 (9th Cir. 2008). This means that we must assess whether the complaint presents a cognizable legal theory and whether it contains sufficient factual allegations to support that theory. *Id.* Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)).

A claim is facially plausible when it contains factual allegations that,

11

if taken as true, would allow the court to reasonably infer that the defendant is liable to the plaintiff. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Additionally, we do not accept as true mere legal conclusions because they cannot by themselves establish a plausible claim for relief. *Id.*

Though our review generally is limited to the allegations of the complaint, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001), we also may consider matters properly subject to judicial notice, including other papers filed in the adversary proceeding and the underlying bankruptcy case, s*ee Est. of Blue v. Cnty. of L.A.*, 120 F.3d 982, 984 (9th Cir. 1997); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). In fact, we need not accept as true factual allegations that contradict judicially noticed matters or exhibits attached to and incorporated into the complaint. *Sprewell*, 266 F.3d at 988.

**B.    Aarons' arguments.**

What Aarons does not argue on appeal is as important as what she does argue. On appeal, she does not claim that the bankruptcy court misconstrued the terms of the settlement or the plan, including the reversion of her property to the chapter 7 bankruptcy estate upon conversion. Similarly, she does not deny that the release covered her claims based on the Patch Defendants' pre-confirmation conduct, including the alleged misapplication of the $73,200. Nor does she contest that she failed

12

to obtain financing or make the monthly payments required under the settlement.

Instead, Aarons now argues that the conversion of her bankruptcy to chapter 7 "rescinded" the settlement and plan or rendered them ineffective because it frustrated her purpose of retaining the Bel Air Property. She makes only one other relevant argument in her appeal brief. She claims that she had standing to file the complaint for her individual benefit by virtue of her $600,000 homestead exemption. We address each of these arguments in turn.

1. **The conversion of the case did not rescind the settlement or the plan.**

Aarons stated claims for quiet title, cancellation of the NODs and NOTS, and wrongful foreclosure. She does not deny that to the extent these claims were based on pre-confirmation actions, the claims were within the scope of the release in the settlement, which was approved and incorporated into her confirmed plan. The Patch Defendants moved to dismiss on this basis, arguing that Aarons was bound by that release pursuant to § 1141(a), and the doctrine of claim preclusion. Aarons opposed dismissal based on her belief that the approved settlement was not enforceable because the plan was not consummated and that she was fraudulently induced into making the settlement. She does not press either argument on appeal. Rather, she now argues that the settlement cannot be enforced because conversion of her case frustrated her purpose in settling

her claims. She reasons that under the "frustration of purpose doctrine" any contract whose purpose is frustrated is immediately terminated.

Frustration of purpose is an affirmative defense that may be applied in a breach of contract action when the defendant shows: "(1) the purpose of the contract that has been frustrated was contemplated by both parties in entering the contract; (2) the risk of the event was not reasonably foreseeable and the party claiming frustration did not assume the risk under the contract; and (3) the value of counter-performance is totally or nearly totally destroyed." *SVAP III Poway Crossings, LLC v. Fitness Int'l, LLC*, 87 Cal. App. 5th 882, 895 (2023). Aarons contends that conversion of her bankruptcy has frustrated the purpose of the settlement, which was to save her property from foreclosure.

This argument is without merit. Nothing in the settlement, in the confirmed plan, or even in the complaint, spoke of any guaranty that Aarons would retain her property. Rather, the settlement and plan gave Aarons the **opportunity** to save the property by paying Patch on renegotiated terms. Through the settlement, Aarons resolved her existing claim dispute with Patch, including the alleged 2019 misapplication of her $73,200 payment. Aarons also received a substantial reduction in the amount owed, and an extension of a matured loan that offered her the opportunity to refinance or sell the Bel Air Property. The settlement permitted Aarons to proceed with confirmation of her plan. Aarons fails to state any basis for frustration of purpose. Rather, she received the

14

opportunity that she bargained for; it was her failure to make the loan payments as modified by the settlement that caused the foreclosure.

Similarly, Aarons fails completely to allege or explain how the risk of foreclosure for nonpayment of her loan was neither foreseeable nor assumed in this instance. She failed to plead the elements of the defense in her complaint and has similarly failed to detail any basis to suggest that she would be able to address this requirement on amendment.

Moreover, Aarons may not simply discard the plan she negotiated and confirmed. Under § 1141(a), "the provisions of a confirmed plan bind the debtor" and other interested parties, such as creditors and equity interest holders. The statute recognizes two exceptions to this rule related to the discharge of the debtor, *see* § 1141(d)(2), (3), but neither are relevant here. Thus, once her plan was confirmed and the confirmation order became final and unappealable, the unambiguous terms of her plan and the confirmation order bound her and the other plan constituents. *See J.J. Re-Bar Corp. v. United States (In re J.J. Re-Bar Corp.)*, 420 B.R. 496, 503 (9th Cir. BAP 2009), *aff'd*, 644 F.3d 952 (9th Cir. 2011). Aarons was bound by the terms of her confirmed plan, and conversion had no effect on her settlement. *See In re Oakhurst Lodge, Inc.*, 582 B.R. 784, 792 (Bankr. E.D. Cal. 2018) ("Moreover, conversion of a chapter 11 case to chapter 7 does not vacate the order confirming the plan. *See* 11 U.S.C. § 348 (omitting any reference to §§ 1129 and 1141)."); *see also In re Space Bldg. Corp.*, 206 B.R. 269, 274 (D. Mass. 1996) ("[C]ourts which have considered whether dismissal or

15

conversion of a Chapter 11 case revokes a confirmed Plan, consistently have determined that it does not.").

Aarons cites two Ninth Circuit decisions for the unremarkable proposition that confirmed chapter 11 plans—and settlements incorporated into plans—are "construed basically as a contract." But neither case helps Aarons. In *Baroni v. Seror (In re Baroni)*, 36 F.4th 958, 967-68 (9th Cir. 2022), the Ninth Circuit analogized the confirmed plan to a contract for purposes of determining whether a particular payment default by the reorganized debtor qualified as a material default under the plan. And in *Hillis Motors, Inc. v. Hawaii Automobile Dealers' Ass'n*, 997 F.2d 581, 588 (9th Cir. 1993), the Ninth Circuit analogized the confirmed plan to a contract for purposes of determining whether the plan contemplated that Hillis' corporate assets would continue to be property of the estate after confirmation. In short, both cases used traditional rules of contract interpretation to construe and effectuate the provisions of confirmed plans. Neither case addressed the effect of conversion on a confirmed chapter 11 plan.

Contrary to her argument, nothing in either *Baroni* or *Hillis Motors* suggests that she has pled or could plead a plausible basis to conclude that either her settlement or her confirmed plan are subject to the doctrine of frustration of purpose. Under these circumstances, the bankruptcy court correctly determined that the Patch Defendants' Civil Rule 12(b)(6) motion should be granted as to any pre-confirmation claims she stated in her complaint.

16

## 2. Only the chapter 7 trustee had authority to pursue the post-confirmation causes of action stated in the complaint.

Though the settlement released any claims that existed prior to approval of the settlement at confirmation, Aarons alleged certain conduct that occurred after plan confirmation. The bankruptcy court alternately held that to the extent that any of Aarons' claims were not released by the settlement, she lacked standing to pursue those claims. It held that under the terms of the confirmed plan and conversion order, all property held by the debtor at the time of conversion to chapter 7 became property of the bankruptcy estate. Aarons does not dispute this. Instead, she contends that because she claimed certain exemptions, she had pecuniary interests that gave her standing to bring her action against the Patch Defendants.

In her complaint, Aarons alleged that she had a homestead interest in the Bel Air Property.[6] Aarons argues that her exemption provided her with a concrete and specific injury sufficient to establish injury in fact for constitutional standing and that she is a person aggrieved for purposes of prudential standing. We agree that her exemptions gave Aarons a pecuniary interest in the administration of the Bel Air Property. But she

---

[6] Aarons originally claimed a homestead exemption but amended her exemptions after her case was converted and the Bel Air Property foreclosed. She deleted the homestead exemption and exempted $10,275 in the claims she brought against the Patch Defendants. Nonetheless, on appeal Aarons relies on her homestead exemption to establish her pecuniary interest for purposes of standing. As further explained in this discussion, the exact exemption applied is immaterial to our analysis.

neither owned nor controlled the property or the causes of action related to it.

As the bankruptcy court explained, and Aarons does not challenge, the confirmation and conversion orders provided that all property of the debtor vested in the chapter 7 trustee upon conversion of Aarons' case to chapter 7. *See, e.g., In re Baroni*, 36 F.4th at 971–73; *Pioneer Liquidating Corp. v. U.S. Tr. (In re Consol. Pioneer Mortg. Entities)*, 264 F.3d 803, 807-08 (9th Cir. 2001). The Patch Defendants had not foreclosed the deed of trust against the Bel Air Property prior to conversion of the bankruptcy case to chapter 7. Consequently, the Bel Air Property became property of the chapter 7 bankruptcy estate upon conversion. Moreover, any causes of action that existed at the time of conversion became property of Aarons' bankruptcy estate as well.[7] *See generally Cusano v. Klein,* 264 F.3d 936, 947-48 (9th Cir.2001) (assets of the plaintiff's bankruptcy estate included prepetition causes of action for unpaid royalties); *Runaj v. Wells Fargo Bank,* 667 F. Supp. 2d 1199, 1206 (S.D. Cal. 2009) ("It is well settled that prepetition causes of action, including TILA claims, are assets included within the meaning of property of the estate."). Aarons does not argue otherwise.

Citing *Estate of Spirtos v. One San Bernardino County Superior Court*

---

[7] At oral argument counsel for Aarons argued that she owned causes of action that accrued post-conversion. This makes no sense as the causes of action arise from the ownership of the Bel Air Property which was property of the estate. Accordingly, any causes of action that arose post-conversion from the foreclosure are property of the bankruptcy estate as well.

*Case Numbered SPR 02211*, 443 F.3d 1172, 1175-76 (9th Cir. 2006), the bankruptcy court properly recognized that only the chapter 7 trustee has authority to bring claims on behalf of the bankruptcy estate. *Id.* (citing § 323); *see also* § 704.[8] *Spirtos* amply supports the bankruptcy court's dismissal of Aarons' complaint. *See Est. of Spirtos*, 443 F.3d at 1175-76; *see also Runaj*, 667 F. Supp. 2d at 1206. Pursuant to Civil Rule 17(a)(1), made applicable by Rule 7017, "[a]n action must be prosecuted in the name of the real party in interest." That party was the chapter 7 trustee, not Aarons.[9]

Aarons misunderstands the significance of her exemptions. Both the original homestead exemption and the subsequent exemption in the claims against the Patch Defendants implicitly recognize that the underlying assets are property of the estate. Aarons' exemptions gave her only a right to receive proceeds if those assets were successfully liquidated. As the Supreme Court explained in *Schwab v. Reilly*, 560 U.S. 770, 792 (2010), when

---

[8] Admittedly, there are limited instances when others may pursue causes of action held by a chapter 7 estate. *See, e.g.*, *Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 288 n.10 (9th Cir. BAP 2005); § 522(h). Aarons does not argue that she was authorized by either the trustee or court to file her complaint.

[9] Civil Rule 17(a)(3) provides that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted in the action." The trustee was allowed to participate in the adversary proceeding and elected not to oppose the motion to dismiss though he requested that the case be dismissed without prejudice. The court ultimately dismissed the case with prejudice, but the trustee has not appealed. Though the trustee was never formally substituted into the case, he participated in the case as the real party in interest. Whatever Civil Rule 17(a)(3) may mean in this instance, and we express no opinion on the subject, that issue has not been presented by this appeal.

examining the effect of a bankruptcy exemption, "[i]f an interested party does not object to the claimed interest by the time the Rule 4003 period expires, title to the asset will remain with the estate pursuant to § 541, and the debtor will be guaranteed a payment in the dollar amount of the exemption." *See also Hyman v. Plotkin (In re Hyman),* 967 F.2d 1316, 1321 (9th Cir. 1992) (holding that the California homestead exemption is a limited and conditional right to receive a portion of the proceeds if the exempted homestead is sold rather than an interest in the homestead itself); *see also Morgan-Busby v. Gladstone (In re Morgan-Busby)*, 272 B.R. 257, 265 (9th Cir. BAP 2002) (expanding *Hyman* to other California exemptions and stating that "California's exemption laws do not provide Debtors with an unassailable ownership interest in exempt property . . . . Rather, it restricts Debtors' exemption to the proceeds [of the exempt property], up to the statutory maximum.") Aarons' exemptions did not remove the assets as property of the bankruptcy estate subject to the exclusive administration by the trustee.[10] *See generally Est. of Spirtos*, 443 F.3d at 1175-76. Again, she has not argued otherwise.

---

[10] The Supreme Court in *Schwab* explained how a debtor could exempt the entirety of an asset: "Where, as here, it is important to the debtor to exempt the full market value of the asset **or the asset itself**, our decision will encourage the debtor to declare the value of her claimed exemption in a manner that makes the scope of the exemption clear, for example, by listing the exempt value as 'full fair market value (FMV)' or '100% of FMV.'" *Schwab*, 560 U.S. at 792-93 (emphasis added). *See also Masingale v. Munding (In re Masingale)*, 644 B.R. 530, 540-41 (9th Cir. BAP 2022). Aarons did not attempt to exempt the full fair market value of either the Bel Air Property or the causes of action.

Both the Bel Air Property, and the causes of action related to it, were property of the chapter 7 estate when Aarons filed her lawsuit against the Patch Defendants.[11] Despite her potential pecuniary interest in the causes of action based on her exemption, she was not the real party in interest. Accordingly, she could not prosecute the estate's causes of action. The record demonstrates that the court and the parties recognized this fundamental fact and allowed the trustee to participate in the adversary proceeding as the real party in interest. Ultimately, after two hearings on the motion to dismiss in which the trustee participated, the court concluded: "The Chapter 7 Trustee has elected not to oppose the MTD so he has waived and forfeited any defenses to dismissal on the merits." The trustee did not appeal the court's decision.

While Aarons held some pecuniary interests in the Bel Air Property and the causes of action she filed against the Patch Defendants by virtue of her exemptions, those assets belonged to the bankruptcy estate. She is not the real party in interest and cannot bring or prosecute the causes of action she filed against the Patch Defendants. As a matter of law, her exemptions

---

[11] Property of the estate may also be returned to a debtor by abandonment under § 554. *Runaj,* 667 F. Supp. 2d at 1206-07. The record reflects that the trustee originally attempted to abandon the Bel Air Property, but not the causes of action. However, the bankruptcy court denied abandonment as moot because the Patch Defendants had already foreclosed. No motion was ever made to abandon the causes of action and the trustee's participation in the adversary proceeding, including the two hearings on the motions to dismiss, further emphasize that the estate did not abandon the causes of action before the court dismissed the complaint.

did not confer on her any property interest in the Bel Air Property, or any related causes of action, and the court properly dismissed her complaint.

### 3. The court did not err in dismissing the adversary proceeding with prejudice.

Civil Rule 15 is made applicable in adversary proceedings by Rule 7015. Under Civil Rule 15, a bankruptcy court should grant leave to amend when dismissing under Civil Rule 12(b)(6) unless amendment would be futile. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 968 (9th Cir. 2016) (citing *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). This is true even when leave to amend was not requested in the trial court. *Lopez*, 203 F.3d at 1127; *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

While devoting little time and effort to the issue, Aarons mentions in passing that she should have been granted leave to amend because she believes that some of the shortcomings identified by the bankruptcy court could have been fixed by amendment. But nothing she said in her complaint, in her opposition to the dismissal motion, or on appeal sufficiently addressed the deficiencies in her pleadings arising from her release of pre-confirmation claims and the estate's exclusive right to bring the post-confirmation claims. Nor are we aware of any allegations consistent with her existing pleadings that could cure these deficiencies in her complaint. As a result, any attempt by Aarons to amend the complaint

would have been futile, and the bankruptcy court did not err when it dismissed it with prejudice. *See Garmon v. Cnty. of L.A.*, 828 F.3d 837, 846 (9th Cir. 2016); *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007).

## CONCLUSION

For the reasons set forth above, we AFFIRM.